154 NASSAU STREET REALTY COMPANY, Respondent, *v.* PINKERTON'S NATIONAL DETECTIVE AGENCY, INC., Appellant.

First Department, November 13, 1962.

*Joseph S. Johnston* for appellant.

*Edward Potter* for respondent.

STEUER, J. Defendant appeals from an order of Special Term denying its motion addressed in several respects to the amended complaint. As we believe that the amended complaint does not state a cause of action, whether or not it is deficient in other respects is not significant, and those phases of the motion have not been considered.

The amended complaint alleges that plaintiff was the owner of the building located at 154 Nassau Street. Defendant was a tenant in said building. In October, 1958 these parties entered into a new lease which was for three years to begin on December 1, 1958. The annual rental was $52,578. It is alleged that prior to the execution of this lease, and while negotiations looking toward it were in progress, plaintiff was negotiating with one Gross for a lease of the entire building, of which negotiations defendant had knowledge. Such a lease was entered into with Gross on October 15, 1958. This lease is styled the " top " lease in the complaint, and we adopt that designation.

The top lease contained a provision that Gross would not anticipate or discount any rents of the occupants of the building or suffer them to pay any rents more than one month in advance. It is alleged that defendant had knowledge of this provision. The lease further provided that all leases of space in the build-

ing were assigned to plaintiff but that the assignments should not become effective until Gross suffered certain defaults.

The complaint alleges mesne assignments of the top lease and that defendant attorned and paid its rent to the successive assignees. It is then alleged that defendant negotiated with Tribune Towers, Inc., the assignee in possession of the top lease at the time, to surrender its lease before the expiration of the lease, and did in fact so cancel the last year of the lease, in consideration of which it paid $39,433.50 to Tribune Towers, Inc. This was done without notice to plaintiff.

Thereafter Tribune Towers, Inc., assigned its top lease to other lessees, who later defaulted, and plaintiff obtained the right to all rentals commencing May 1, 1961. Suit is for the rent reserved in defendant's lease for the period from May 1, 1961, to November 30, 1961, the date of its expiration.

Assuming, as we must, the factual validity of these allegations, what they amount to is that defendant, by paying a consideration, obtained a cancellation of the final year of its lease, and that it did this with knowledge of the clauses contained in plaintiff's lease of the entire building. Plaintiff rests on either of two theories, first that cancellation of the lease comes within the prohibition against prepayment, or that defendant was foreclosed by its knowledge that its lease stood as security for the main lease from doing anything that would impair that security.

Assuming that the terms of the top lease imposed a liability on defendant, despite the fact that it never consented to them, that liability would be limited to the strict terms of the lease. No liability on a tenant can be presumed or implied (*455 Seventh Ave.* v. *Hussey Realty Corp.,* 295 N. Y. 166). It is unanswerable that there is no provision in the top lease against cancellation, but only against prepayment. These are distinct activities and one does not embrace the other. Nor are there any factual allegations to support the claim that the transaction between defendant and the assignee of the top lease was in effect a prepayment.

We come now to the question of whether defendant's knowledge that its lease stood as security for another lease prevented it on pain of paying damage from doing anything that might impair the value of its lease as security. That is not the law. The basis of plaintiff's contention is interference with its contract rights by one having knowledge of those rights. But not every such interference is actionable. The original cause of action was limited to a malicious interference with contract rights. We have defined " malice " in this connection so that it " does not necessarily mean actual malice or ill-will but the intentional doing of a wrongful act without legal or social justifica-

tion '' (*Campbell* v. *Gates,* 236 N. Y. 457, 460). The act must be without reasonable justification or excuse (see *Hornstein* v. *Podwitz,* 254 N. Y. 443, 448). Here the defendant desired to be relieved of its lease. It negotiated with its landlord as it had an unquestionable right to do. In the words quoted it had both legal and social justification for its act. That act proved disadvantageous to a third party, but that alone does not make it either illegal or so contrary to our sense of fair dealing as to denominate it socially unjustifiable. To say otherwise is to impose a standard above that of the market place, namely, that one otherwise free to act may not buy his release from a burdensome contract is he knows that by so doing a third party may be disadvantageously affected. Or to put it conversely, an over-all landlord may impose a condition on a subtenant not found in the sublease by giving notice that an act, lawful, common and not offensive to morals, may cause him damage.

The foregoing is based upon the conclusion, which is a necessary implication from the facts alleged, that the lease between the parties was assigned by plaintiff to Gross and later assigned to the mesne assignee. And further that Tribune Towers, Inc., the assignee at the time of the cancellation, was then defendant's landlord. Obviously, if the lease between the parties was never assigned by plaintiff, the purported cancellation would be entirely without effect, as the mesne assignee would be a complete stranger. That the lease was assigned is not specifically alleged, but the further allegations make it clear beyond the possibility of controversy that this was the intent of the pleader. The allegation that the defendant attorned to the mesne assignees, the fact that plaintiff's rights to collect rent from defendant were dependent on its dispossessing the so-called top lessee, and its acknowledgment that there was a cancellation, albeit denominated unlawful, prevent the complaint from being read in any other way.

Nor can it be claimed that the complaint admits of the possibility that the lease entered into by defendant was reassigned to plaintiff by the top lessee. The complaint does not allege any such reassignment except as an assignment through operation of law may be inferred from other allegations. The top lease does provide that all leases on space in the building, either existing or thereafter to be made by the top lessee, are assigned to plaintiff '' upon condition, however, that such assignment shall become operative and effective only in the event that this lease [the top lease] and the term hereof shall be cancelled or terminated pursuant to the terms, covenants and conditions hereof''. The intention and effect of this clause is quite clear. The lessee's

relationship to the lessees of space and their leases continued as if no assignment were made by the top lessee. No other meaning is attributable to the provision that the assignments were not to become operative and effective. Moreover, if the top lessee did not occupy the position of landlord in regard to the lessees of space, attornment would not be called for. What the provision was intended to effectuate was that immediately upon a default by the top lessee, the assignments would become effective *ipso facto*, and without the necessity of executing further documents or even evicting the top lessee. Needless to say, it is not alleged that the top lessee was in default at the time of the cancellation of defendant's lease.

Furthermore, this is undoubtedly the understanding of the pleader. It is not alleged that the cancellation was futile, as it would have been had the transaction been with anyone other than defendant's landlord. On the contrary, it is definitely alleged that the cancellation was improper only because it impaired the security provided for in the top lease, or because it was in effect a prepayment of rent. As we have seen, both of these contentions are without merit.

The order denying defendant's motion to dismiss the complaint should be reversed on the law and the motion granted, with costs to appellant.

BREITEL, J. (dissenting). The order denying defendant's motion to dismiss the amended complaint for legal insufficiency should be affirmed.

The pleading alleges that defendant's lease had been reassigned to plaintiff. This fact, if known to defendant as is also alleged, was sufficient to disable defendant from effecting a surrender and acceptance of the lease with the successor landlord, valid and binding on plaintiff, unless the consent of plaintiff had been first obtained.

The clause in the top lease to the extent set forth in the amended complaint reads as follows:

" Section 14:03. In the circumstances hereinafter mentioned, Tenant shall assign, transfer and set over to Landlord, and does hereby assign, transfer and set over, such of the subleases that Tenant may make or such as are now in existence of the Demised Premises * * * upon condition, however, that such assignment shall become operative and effective only in the event that this lease and the term hereof shall be cancelled or terminated pursuant to the terms, covenants and conditions hereof, or in the event of the issuance and execution of a dispossess warrant or other re-entry or repossession by Landlord under the provisions hereof.

"In the event of such assignment becoming effective and operative as above provided, Tenant hereby authorizes Landlord in the name of Tenant, or otherwise, as Landlord may elect, to take all necessary steps and legal proceedings, (whether by summary proceedings, ejectment, or other legal or equitable suit or proceeding), to enforce the performance of the terms, covenants and conditions of such sublease."

The opening language provides that the subleases, present or future, are assigned. The nomenclature "subleases" with respect to existing leases is inept, but its purport is clear in referring to leases made by prior landlord (this plaintiff) to tenants occupying portions of the premises. About this, no one makes dispute.

True, the quoted provision states also that the assignment (as to existing leases, really "reassignment") "shall become operative and effective only in the event that this lease and the term hereof shall be cancelled or terminated pursuant to the terms, covenants and conditions hereof, or in the event of the issuance and execution of a dispossess warrant". Again, this is inept language, but it is equally clear that the provision means that the assignee (who is such solely for purposes of security) shall not take possession and control of the "subleases", that is, act as landlord by collecting rents and generally taking over the management of the "subleases", until the specified contingencies have occurred.* To construe the assignment as having no present effect, merely because the draftsman used language which successively cancelled itself is truly to make a talisman of words, rather than weighing the ideas they represent. If anything is certain in this case, it is that the parties intended that some present effect should be given to the assignment of the "subleases".

Consequently, defendant, if the allegations are true, surrendered its lease to one who, with its knowledge, had parted with power validly, as against plaintiff, to accept such surrender in the absence of the assignee's concurrence. Consequently, too, the plaintiff is the security owner of the lease, and as such, it cannot be affected by the purported surrender and acceptance between the assignor or the assignor's successor and defendant, whatever their rights might be between them. For this plaintiff has the right to choose among several remedies. One such remedy, perhaps, may not be to treat it as an interference with its contract rights, but that is of no significance. On the plead-

---

* For a parallel see *St. Louis Union Trust Co.* v. *Jolliffe*, 74 F. 2d 247, 249 (C. A. 2d, L. Hand, J.); see, also, Anno. Rent — Mortgagor and Mortgagee, 105 A. L. R. 744, 752–753.

ing it suffices that the ultimate facts establish a transaction which does not and cannot negative plaintiff's rights existing prior to the purported surrender and acceptance. Of course, plaintiff must prove its allegations, especially of knowledge by defendant of the top lease and the terms affecting defendant as the lessee under a lease made prior to such top lease.

The key, of course, to liability is defendant's knowledge of this assignment. As already noted, such knowledge is alleged and, for purposes of a pleading motion, must be assumed to have been present when defendant paid a substantial sum to the successor landlord for the lease surrender. The situation is no different than if a tenant, with knowledge of all the facts, surrenders a lease for a consideration to a landlord who has validly assigned the rents as security to another (for references to the obligations of a tenant whose landlord has assigned or mortgaged the lease, see 2 McAdam, Landlord & Tenant [5th ed.], § 233).

On this analysis one is not concerned with the case of a stranger to a contract who makes an agreement with one of the parties to the contract inconsistent with such party's prior obligation. Instead, defendant was no stranger to the top lease but one whose obligations had been affected by the assignment and reassignment of its own lease, binding on it so long as it had notice. As a matter of fact, the privilege under the claim of economic or other justification or excuse to interfere with another's contract is not nearly as broad as suggested by the application in this case by the majority. Cases like *Campbell* v. *Gates* (236 N. Y. 457, 460) and *Hornstein* v. *Podwitz* (254 N. Y. 443, 448–449) state the rule as does the majority, but nothing in the holdings or the opinions suggests the extraordinary view that an economic self-interest is sufficient to justify any intentional interference with another's contract. The rule is not to be confused with so-called "prima facie tort" (*Ruza* v. *Ruza*, 286 App. Div. 767; cf. *Knapp Engraving* v. *Keystone Photo Engraving Corp.*, 1 A D 2d 170). (See Restatement, Torts, §§ 766–769.)

Accordingly, I dissent and vote to affirm the order denying defendant's motion to dismiss the amended complaint for legal insufficiency.

Botein, P. J., and Stevens, J., concur with Steuer, J.; Breitel, J., dissents in opinion, in which Rabin, J., concurs.

Order, entered on May 1, 1962, denying defendant's motion to dismiss the complaint reversed on the law, with $20 costs and disbursements to appellant, and the motion granted, with $10 costs.