■ FIDELITY MUTUAL LIFE INSURANCE COMPANY, Respondent, v AMERICAN BROADCASTING COMPANY, INC., Appellant, et al., Defendants.—Judgment, Supreme Court, New York County, entered March 11, 1977, *inter alia,* granting plaintiff's motion for summary judgment, modified, on the law, said motion denied, the case remanded for trial of the issues and in all other respects affirmed, without costs, and without disbursements. We accept the facts as set forth by our dissenting colleague, however we think it would be improvident to grant summary judgment in view of the substantial questions of fact remaining to be resolved. Special Term granted plaintiff's motion and denied defendant's motion for summary judgment in the foreclosure action premised on the belief that clause 14 (a) of the lease controlled the defendant's conduct. American Broadcasting Companies (hereinafter referred to as ABC) vacated premises pursuant to a negotiated settlement with the owners which provided, *inter alia,* that "the lease shall be extinguished * * * as though October 1, 1968, was the termination date of the lease", and pursuant thereto, ABC and the owners mutually released one another. The clause in question bound the defendant not to modify the lease, and continued defendant's liability to the end of the term if defendant should abandon the premises. A subsequent assignment of rents agreed to by the defendant further bound the defendant not to modify the lease. Prior thereto, the lease had been assigned to the plaintiff as security for a mortgage. The plaintiff elected to consider the release as a default under the mortgage. Defendant ABC was, at the time, a holder of a second mortgage on the subject premises. After extensive negotiations in 1970, the ABC mortgage was consolidated with the first mortgage. Now on foreclosure of the consolidated mortgage, plaintiff seeks to hold ABC liable for any deficiency resulting after sale of the foreclosed premises. An underlying question is whether a surrender of the lease is precluded by a covenant against modification. The court decided, in its own words, that it "need not decide whether a vacating of the premises by defendant ABC constituted a modification of the lease or a surrender thereof, because clause 14 (a) of the lease provides that defendant shall remain liable * * * under the lease after it abandons the premises," and thus avoided making a rather important distinction. We see surrender as normally being distinct from modification and as equivalent to performance (2 McAdam, Landlord and Tenant [5th ed], § 324). Although surrender can extinguish the estate whereas modification is an alteration that does not, however, fundamentally alter the subject, in this situation we cannot be certain that surrender is not modification, and the owner's acceptance terminated defendant's obligation. The clause in question offers remedies to the "Landlord", in addition to re-entry, upon the defendant's breach of the lease, ejectment from the premises or abandonment of the premises. Plaintiff did not become defendant's landlord by

virtue of the "attornment", as nowhere in the attornment was there language acknowledging plaintiff as defendant's landlord. Other questions arise. What was the intent of the parties? Did the defendant's agreement to the assignment of rents make defendant a surety? Plaintiff contends that the defendant's lease stood as security in order to justify plaintiff's recovery prior to foreclosure; however, nowhere is there clear evidence that this was the intention of the parties, and the intention of the parties raises a question of fact. "A lease like any other contract, is to be interpreted in light of the purposes sought to be attained by the parties." *(Cohen v Bass, Inc.,* 246 NY 270). Further, approximately two years after the alleged breach, plaintiff entered into a new agreement with the owners. The surrender agreement had been secured and payment of rent had ceased. May plaintiff then say, after this, that he relied upon the lease as security? Again, a question of fact. By entering into the new agreement, had plaintiff abandoned its claimed right to treat the lease as security? Considering the question of damages, plaintiff recovered the exact amount sought on foreclosure. However, defendant's monthly lease obligation was less than the sum owed monthly under the consolidated and extended loan. There was also due plaintiff at the end of the term a lump sum equal to nearly four years' rent. In the absence of clear language, it is difficult to perceive of a mortgage accelerating the payment of rent. We also note that at the time of the surrender of lease, ABC did not consider itself liable under the obligation and paid no further rent. Instead of moving forthwith to secure itself, two years later plaintiff extended its liability. The award also reflects a sum for unpaid taxes, notwithstanding that the lease provided that taxes become a part of the rent only after payment, and there is no allegation of payment. There are many unanswered questions revolving about the relationship of the plaintiff and the defendant which may only be resolved by plenary proceedings. Concur—Kupferman, J. P., Silverman and Evans, JJ.; Lane, J., dissents in the following memorandum: American Broadcasting Companies, Inc. (ABC) had entered into an agreement of lease with the owners of the Ritz Theatre on March 25, 1963. The lease was for a period of 20 years. The owners of the theatre then sought a $900,000 loan from Fidelity Mutual Life Insurance Company (Fidelity). Fidelity approved the loan, provided that the property and the lease be transferred to a corporate entity to be formed and that there be an assignment of rents due under the ABC lease. To that end, the owners of the Ritz formed a corporation named the Gold Fund Advisory Co., Inc.; transferred the property to Gold Fund; Gold Fund executed an assignment of rents to Fidelity; and ABC signed a document with the rubric "Attornment." The document signed by ABC provided in pertinent part: "AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., the Lessee referred to in the foregoing Assignment [of rents] agrees that payment of all the rent due and to become due from Lessee under the Lease * * * will be made directly to the Assignee named therein, so long as said Assignment shall continue in force. * * * So long as the Note referred to in said Assignment is outstanding, *the Lessee will not,* without the written consent of the Assignee *modify or permit modification of the Lease."* (Emphasis added.) The document contained no acknowledgment of Fidelity as a landlord. ABC continued as tenant and paid the requisite rents. In 1968, it unsuccessfully sought permission from its landlord to substitute another tenant. ABC then brought suit to compel the consent of the landlord. Fidelity was not named as a party. Nonetheless, a stipulation of settlement was entered into, resulting in an agreement dated October 1, 1968 in which the landlord of ABC accepted, *inter alia,* a surrender of the premises and further agreed to

extinguish the ABC lease agreement. In addition thereto, ABC financed a second mortgage in the amount of $50,000 in favor of the landlord. In 1970, after negotiations among landlord and Fidelity representatives, Fidelity consolidated its mortgage and the second mortgage of ABC. ABC, after being notified by Fidelity, consented to such consolidation in a letter stating: "Please be advised that after we have assigned our second mortgage and have been paid in full * * * we have no objection to the consolidation of the above referred to second mortgage with the first mortgage on the property, which we understand you still hold." In August, 1973, Fidelity instituted this foreclosure action against the 1970 consolidated mortgage and sought to hold ABC liable for any deficiency based on ABC's obligations under the assignment of lease and attornment agreement. Both Fidelity and ABC moved for summary judgment and Special Term granted summary judgment to Fidelity. I would reverse and grant summary judgment to ABC. The agreement signed by ABC (quoted above) provided that it as lessee would not modify or permit modification of the lease. A lease modification is certainly distinguishable from a surrender of a lease. A modification is an "alteration which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject matter intact" *(Black's Law Dictionary* [4th ed, 1968]). A surrender involves a giving up of the leasehold entirely. By the terms of the agreement, a modification only was prohibited to ABC. Since ABC effected a surrender and extinguishing of the lease, it was not in breach of the agreement. In any event, absent a contractual obligation to the contrary, ABC had a right to seek to be relieved of the lease, though it knew that the lease was an inducement to Fidelity to make a loan of $900,000 *(154 Nassau St. Realty v Pinkerton's Nat. Detective Agency,* 17 AD2d 292, 294-295). Furthermore, it must be noted that section 14 (a) of the lease agreement was erroneously relied upon by Special Term to grant summary judgment to Fidelity, and in any event cannot operate as a bar to the granting of summary judgment to ABC. Section 14 (a) refers to cessation of a landlord-tenant relationship by virtue of re-entry of the landlord; ejectment of the tenant by summary proceedings or abandonment of the premises by the tenant. It provides remedies therefor to the landlord. In the case at bar, no landlord-tenant relationship existed between Fidelity and ABC. The "attornment" document, as previously noted, provided for an assignment of rents, not a recognition of Fidelity as a landlord. The remedies afforded by section 14 (a) of the lease are therefore not available to Fidelity. Even were these remedies deemed to be available to Fidelity, they would not be applicable to the facts of this case since ABC entered into an agreement with the landlord to surrender the premises. The remedies listed in section 14 (a) of the lease therefore could not come into play. It must be concluded that since ABC did not breach any contractual obligation it is entitled as a matter of law to summary judgment in its favor. Accordingly, the judgment of the Supreme Court, New York County, entered March 11, 1977, *inter alia,* granting summary judgment to the plaintiff and denying summary judgment to the defendant ABC, insofar as appealed from, should be reversed, on the law, and summary judgment granted to the defendant ABC.