Arnold Gf. Fraiman, J.
This is an action to cancel a sublease between plaintiff Texaco, Inc., and defendant Greenwich-Kinney, Inc., and to restore plaintiff to possession of the land. Defendant’s answer contains a number of counterclaims in which it seeks, among other relief, a declaratory judgment that said defendant may use the demised premises as a car wash. The case was tried before the court without a jury. Texaco is the prime tenant under a lease with Belmo Realty Cdrp., of the premises in question, which are located at First Avenue between 36th and 37th Streets. This lease is for a term of 20 years commencing April 1, 1958, with an additional renewal for two additjonal 5-year periods.
Texaco maintains a service station on the westerly portion of the premises, which front on First Avenue, and the balance of the demised area to the east is subleased by it to Greenwich-Kinney. The sublease to Greenwich-Kinney is also for 20 years from April 1, 1958, and gives Greenwich-Kinney an option to renew for the two additional 5-year periods in the event Texaco exercises renewal option under the master lease. The lease with *819 Greenwich-Kinney is subject to the provisions of the master lease.
Paragraph FIFTH of the sublease states: “The Tenant covenants and agrees to use the demised premises only for the parking of automobiles of the general public and any lawful purpose incidental to such use; provided, however, that in the event any circumstances beyond Tenant’s control shall prevent Tenant from so using the demised premises profitably, Tenant may thereafter, during the initial and any extended term hereof for so long as such circumstance exists, use the premises for any other lawful purpose; provided, further, however,(that petroleum products and automobile accessories customarily sold at service stations shall not be sold from the demised premises to anyone at any time during the initial or any extended term hereof.”
From the time it took possession under the sublease, Greenwich-Kinney has operated a parking lot on the premises. The sublease calls for a base rental plus a percentage of the gross parking receipts in excess of a stated sum. The receipts have never been sufficient to warrant the payment of more than the base rental, however. No other rent is specified in the event the premises are used for a purpose other than a parking lot.
On April 19, 1969 Texaco received a letter from Skyways Service Station, Inc., requesting Texaco’s consent to an assignment of the lease to it from Greenwich-Kinney. Skyways, whose principals are also the principals of the defendant Black Hawk Bock Oorp. (Black Hawk) indicated in its letter that upon taking the assignment of the lease it intended to erect a car wash on the premises.
Paragraph NINETEENTH of the sublease provides that it may not be assigned, transferred or sublet without the written consent of Texaco, but that such consent shall not be unreasonably withheld. By letters dated May 6, 1969 and May 8, 1969, Texaco advised Skyways that it refused to consent to the assignment because the contemplated use was contrary to the provisions of paragraph FIFTH of the lease, quoted above. ,
On May 15, 1969 Greenwich-Kinney advised Texaco by letter that it had assigned its lease to Black Hawk effective August 1, 1969. It stated that Texaco’s refusal to consent to an assignment was unreasonable and in violation of the lease inasmuch as Greenwich-Kinney was privileged under paragraph FIFTH to use the premises for “ any other lawful purpose ” if it could not operate the parking lot profitably, and it “ certified ” that such was- the fact. On June 25, 1969 Texaco responded that *820 Greenwich-Kinney had not demonstrated its right to any other use under paragraph FIFTH.
Greenwich-Kinney did nothing further until November 1,1969 when it entered into an agreement with Black Hawk canceling the assignment and substituting in its place a management agreement whereby Black Hawk would operate a car wash on the premises as Greenwich-Kinney’s managing agent for the term of the latter’s lease with Texaco. (Under the management agreement Black Hawk is to construct the car wash at its own expense and is to pay Greenwich-Kinney an amount equal to its rent to Texaco plus an override of $625 a month out of the gross income realized by it from its operation of the premises. This is approximately the same amount as it would have paid Greenwich-Kinney in rent as assignee of the lease.)
It is undisputed that Black Hawk has thus far operated the premises, as Greenwich-Kinney’s agent, solely as a parking lot, and that Greenwich-Kinney has continued to pay. to Texaco rent in accordance with its sublease and Texaco has accepted such payments.
On November 6, 1969, Texaco commenced the instant action against Greenwich-Kinney, Kinney Corporation (which guaranteed Greenwich-Kinney’s performance of the sublease) and Black Hawk. Texaco seeks to have the sublease canceled on the ground that Greenwich-Kinney ’ s assignment of it do Black Hawk without its consent constituted a breach of paragraph FIFTEENTH of the sublease, which provides that in the event of an assignment except as permitted, the lease shall, at landlord’s option, terminate.
Defendants, in addition to a general denial, have asserted as affirmative defenses that Texaco failed to give 10 days ’ notice of the alleged breach, as required under the sublease; that Greenwich-Kinney canceled the assignment to Black Hawk prior to the commencement of this action; and that Texaco waived the alleged breach by continuing to accept rent after being notified thereof, and by giving its consent to a prior assignment of the sublease in 1962 without expressly having reserved its rights with respect to future assignments.
As a counterclaim, Greenwich-Kinney asserts that under paragraph FIFTH it had the right to erect a car wash and, accordingly, Texaco’s refusal to permit the assignment to Black Hawk for such purpose was unreasonable. It seeks a declaratory judgment to the effect that (1) the car wash is a permitted use under the lease as incidental to parking; or (2) circumstances beyond its control having prevented it from operating the parking lot *821 profitably, it is entitled to use the premises as a car wash under paragraph FIFTH. Finally, Greenwich-Kinney seeks recoupment of rents paid since August 1,1969 based on Texaco’s alleged breach of quiet enjoyment by its refusal to consent to the assignment.
The provision for forfeiture upon an unauthorized assignment, contained in paragraph FIFTEENTH of the sublease, upon which Texaco relies, is not automatic. It occurs only when the landlord elects to exercise its right of forfeiture. Thus, some act was required on the part of the landlord before the lease could effectively be terminated. (Norman S. Riesenfeld, Inc. v. R-W Realty Co., 223 App. Div. 140; 1 Rasch, New York Law of Landlord and Tenant and Summary Proceedings, § 66 et seq.) Texaco took no such action until the commencement of this suit, which occurred after Greenwich-Kinney had canceled its purported assignment to Black Hawk. Moreover, Texaco’s continued acceptance of rent from Greenwich-Kinney, with knowledge of the alleged assignment, operated as a waiver of its right of forfeiture. (Woollard v. Schaffer Stores Co., 272 N. Y. 304; Condit v. Manischewitz, 220 App. Div. 366.) Accordingly, plaintiff’s complaint must be dismissed.
Turning to defendants’ counterclaims, the court holds as a matter of law that the operation of a car wash on the premises is not a purpose incidental to the use of a parking lot under paragraph FIFTH of the sublease. However, that paragraph clearly grants Greenwich-Kinney the right to use the premises for “ any other lawful purpose ” in the event circumstances beyond its control prevent it from using the premises “ profitably.” On the trial Greenwich-Kinney offered evidence that its operation of a parking lot resulted in net operating losses of $18,803.65 for 196A-65; $12,111.03 for 1965-66; $2,990.40 for 1966-67; $999.25 for 1967^68; and $240.48 for 1968-69 (10 months). Under Black Hawk’s management, losses of $6,680.59 for 1969-70 and $3,634.83 for the seven months ended February 28, 1971 were sustained. The evidence indicated that operational expenses for the above periods were normal and the rates charged to customers were competitive with other similarly situated parking lots. Nor is there any merit to Texaco’s contention that by reason of the management agreement, Greenwich-Kinney is now assured a profit. This ignores the fact that the management agreement contemplates the erection and operation of a car wash by Black Hawk.. It is clear from a reading of the agreement that if Black Hawk is prevented from going into the car wash business by reason of Texaco’s sublease with Greenwich-Kinney, the agreement becomes a nullity.
*822 The court is satisfied that due to circumstances beyond its control, Greenwich-Kinney has been prevented from using the premises profitably within the meaning of paragraph FIFTH of the sublease, and it is therefore entitled to use the premises for any other lawful purpose, including the operation of a car wash. Hor is the use of the premises as a car wash, per se, detrimental to Texaco’s operations. In this connection, Greenwich-Kinney has represented to Texaco that the contemplated car wash would be constructed with an entrance on 36th Street so that any waiting cars would have to park on the south side of 36th Street or on the east side of First Avenue, below 36th Street, which would not block access to the service station. The court has taken this representation into consideration in finding that the use of the premises as a car wash would not be detrimental to Texaco’s business.
Accordingly, Greenwich-Kinney is entitled to a declaratory judgment that it has a right to use the premises for the operation of a car wash if it so elects, and any refusal by Texaco to consent to an assignment of the lease because of this use would be unreasonable.
Greenwich-Kinney also claims the right to recoupment of rents since August, 1969 based on Texaco’s refusal to consent to the assignment. While a tenant may recover damages for a landlord’s unreasonable withholding of consent to an assignment (Arlu Assoc. v. Rosner, 14 A D 2d 272), recoupment of rent is not a proper measure of damages, and Greenwich-Kinney has failed to prove that it has incurred any damages by reason of Greenwich-Kinney’s refusal. In any event, Greenwich-Kinney has not shown that Texaco’s refusal to consent to the assignment in August, 1969 — based solely upon Greenwich-Kinney’s demand, and “ certification ” of the unprofitability of its operations — was unreasonable.
Some mention should be made of the fact that although the sublease provides for a fixed rental plus a percentage of the gross parking receipts when the premises are used as a parking lot, no provision is made for the amount of rent to be paid in the event the premises are used for a “lawful purpose” other than a parking lot. Under such circumstances it would appear that section 220 of the Real Property Law would be applicable. This provides that the landlord may recover 11 a reasonable compensation ’ ’ for the use of real property under an agreement not made by deed where the amount of rent is not specified (1 Rasch, Landlord and Tenant and Summary Proceedings, § 256). Ho evidence has been submitted on this question. In the event the *823 parties are unable to agree upon what would be reasonable rental for the premises as a car wash, either party may make application to this court for a hearing for the purpose of having the court fix such rental, pursuant to section 220 of the Real Property Law.
The court does not pass upon the propriety of the particular plans for the construction of the car wash which were offered in evidence by Greenwich-Kinney. Texaco argues that its landlord, Behno Realty, under the master lease may have the right to refuse to consent to the construction work necessary for the operation of a car wash. Inasmuch as the sublease is subject to the terms and conditions of the master lease, the parties to the sublease are bound by its provisions. However, the questions whether such right exists or whether it will be exercised by Belmo are not now before the court and may or may not arise in futuro. Therefore, they cannot be resolved at this time.