OPINION OF THE COURT
Norman C. Ryp, J.
Sublease or release? Ratification or reasonable refusal? A legislative intentional dilemma or determination?
A. ISSUE
Does section 226-b of the Real Property Law, as amended (right to sublease or assign), after tenant’s requisite notice of intent to sublease and landlord’s arbitrary rejection, give a residential tenant the right to sublease or a release from the lease?
B. PROCEDURAL HISTORY AND PARTIES’ CONTENTIONS
This is an action by a residential tenant (tenant) for a *15 declaratory judgment, pursuant to CPLR 3001 and 3017 (subd [b]), an injunction to compel defendants, owner and managing agents (landlord), to consent to a proposed sublease and consequential damages. The basis of tenant’s action is landlord’s unreasonable withholding of consent, as supported by prior New York case law, and as a matter of right under section 226-b of the Real Property Law, as amended, as logically and equitably interpreted.
In opposition, landlord seeks to dismiss tenant’s action upon the merits and with costs and set this matter down for an inquest to determine reasonable attorney’s fees, under paragraphs 20(a) and (c) and 22 of the lease. Landlord, assuming without conceding tenant’s allegations, submits that both prior case law, under section 226-b of the Real Property Law, as amended, its clear and proper interpretation and legislative intent as expressed by its New York State Assembly sponsor, mandate the dismissal of tenant’s action and granting of landlord’s relief.
This action was commenced by order to show cause, dated May 19, 1980, together with a supporting affirmation, summons and complaint, all dated May 19, 1980 and served upon defendants and attorney on May 20 and 21, 1980, respectively. Thereafter, on May 27, 1980, issue was joined by service of defendants’ affidavit in opposition upon plaintiff.
C. FACTS
The facts are undisputed, as follows. Tenant, an attorney appearing pro se, and landlord, on July 30, 1979, duly entered into a Real Estate Board of New York, Inc., standard form of apartment lease (1978) for rent-stabilized apartment 2RW, Premises No. 210 East 25th Street, New York, which contains over four residential units. Said lease was for a three-year term, effective November 1, 1979 and October 31, 1982, at a monthly base rental of $178.25, with a one-month security deposit.
Pertinent paragraph 18(A) of said lease provides: “18. (A) Assignment, subletting. — Except as provided by section 226-b of the Real Property Law of New York, the *16 Tenant shall not assign the Lease, nor sublet the Apartment, or permit the Apartment or any part thereof to be used by anyone other than Tenant or members of the immediate family of Tenant, without the prior written consent of Owner in each case. If the Lease is assigned, or if the Apartment is sublet or occupied by anyone other than Tenant or Tenant’s immediate family, Owner may, after default by Tenant, collect rent from the assignee, subtenant or occupant, and credit the amount collected to the rent due from Tenant, but no such assignment, subletting, occupancy or collection shall be a waiver by Owner of this agreement by Tenant, or the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of agreements on the part of Tenant mentioned in the Lease. The consent of Owner to an assignment or subletting shall not in any way release Tenant from obtaining the consent in writing of Owner to any further assignment or subletting(Italics added.) Paragraphs 20 (remedies of owner) and 22 (fees and expenses) provide for tenant’s responsibility for recovery of attorney’s fees owner has paid in bringing any legal action or dispossess proceedings for tenant’s violation of said lease. Paragraph 31 (rider) also provides: “31. The demised premises are rented and shall be occupied in accordance with Clause #2 and the Tenant agrees to adhere to the restriction against assignment or subletting.” (Italics added.)
Thereafter, on May 6, 1980, tenant, by certified mail, return receipt requested, notified landlord’s managing agent, Page Management Co., Inc., by Theodore Bye, of his intent to sublease subject apartment, beginning July 1, 1980, to Mr. and Mrs. Kenneth Schnide, proposed sub-lessees, and included their current respective home and business addresses. It does not appear that the proposed sublessees are members of tenant’s immediate family. Mr. Schnide is evidently a medical student, intern or resident at New York Medical College while Mrs. Schnide is an elementary school teacher, both currently living together in High Falls, New York.
Thereafter, on May 15, 1980, landlord, by its managing *17 agent, advised tenant, by mail, that “we do not grant you permission to sublet the apartment. We do not choose to have apartments passed from hand to hand.” Thereafter, on May 20, 1980, tenant commenced this action.
D. APPLICABLE STATUTES
1. Section 226-b of the Real Property Law: Right to sublease or assign
“1. A tenant renting a residence in a dwelling having four or more residential units shall have the right to sublease or assign his premises, subject to the written consent of the landlord given in advance of the sublease or assignment. Such consent shall not be unreasonably withheld. If the landlord unreasonably withholds consent for such sublease or assignment, the landlord must release the tenant from the lease upon request of the tenant.
“2. The tenant shall inform the landlord of his intent to sublease or assign by mailing a notice of such intent by registered or certified mail. Such request shall be accompanied by the written consent thereto of any co-tenant or guarantor of such lease and a statement of the name, business and home address of the proposed sublessee or assignee. Within ten days after the mailing of such request, the landlord may ask the sender thereof for additional information as will enable the landlord to determine if rejection of such request shall be unreasonable. Within thirty days after the mailing of the request for consent, or of the additional information reasonably asked for by the landlord, whichever is later, the landlord shall send a notice to the sender thereof of his consent or, if he does not consent, his reasons therefore. Landlord’s failure to send such a notice shall be deemed to be a consent to the proposed subletting or assignment. If the landlord consents, the premises may be sublet or assigned in accordance with the request, but the tenant thereunder, shall nevertheless remain liable for the performance of tenant’s obligations under said lease.” (Italics supplied.)
3. (This subdivision simply provides that Real Property *18 Law, § 226-b does not apply to: leases entered into before June 3, 1975, the effective date of the statute; public housing or other residential units with constitutional or statutory admission criteria; or a co-operative’s proprietary lease. All are inapplicable herein; L 1975, ch 146, eff June 3, 1975, as amd by L 1975, ch 548, eff July 29, 1975 and L 1976, ch 198, eff May 25, 1976 [which added all provisions relating to the right to assign residential leases and is not applicable herein].)
2. Section 226-b of the Real Property Law, as originally enacted (L 1975, ch 146, eff June 3, 1975), provided:
“1. A tenant renting a residence in a dwelling having four or more residential units shall have the right to sublease his premises, subject to the written consent of the landlord given in advance of the sublease. Such consent shall not be unreasonably withheld. If the landlord unreasonably withholds consent for such sublease, he must agree to release the tenant from the lease or accept the sublessee.
“2. The tenant shall inform the landlord of his intent to sublease by mailing a notice of such intent by registered or certified mail. Upon receipt of such notice the landlord must notify the tenant of his consent or lack thereof by registered or certified mail within thirty days. If after the thirtieth day no such notice is mailed, the landlord is deemed to have consented to the sublease. Such sublease shall not release the tenant from his obligations to the landlord.” (Italics added indicates deletions by later amendment enacted July 29, 1975 less than two months after the orginal law, eff June 3, 1975. See L 1975, ch 548, eff July 29,1975.)
3. Rent Stabilization Law of 1969,.as amended (RSL, Administrative Code of the City of New York, ch 51, § YY 51-1.0 et seq.)
There appear to be no directly applicable RSL provisions, including its Rent Stabilization Code promulgated thereunder. Recently, however, an informational bulletin, including a RSL apartment lease Rider, effective May 6, 1980, was approved under RSL section 6.0(d), to be discussed below.
*19 E. APPLICABLE LAW
1. COMMON LAW — RIGHT TO SUBLET OR ASSIGN AND RESTRICTIONS THEREON
A sublease was originally defined as a grant by tenant of an interest in demised premises less than his (her or its) own, retaining a reversion. (Collins v Hasbrouck, 56 NY 157, 162.) At common law in New York, the general rule is that, in the absence of an express restriction, by contract or statute, a tenant for a definite term has an unrestricted right to assign or sublet at Will (Eten v Luyster, 60 NY 252; Fleisch v Schnaier, 119 App Div 185) with restrictions thereon viewed with disfavor by the courts. (Francis v Ferguson, 246 NY 516; American Book Co. v Yeshiva Univ. Dev. Foundation, 59 Misc 2d 31, 33.) Furthermore, provisions or covenants in a lease restricting assignment or subletting are “restraints which courts do not favor. They are construed with the utmost jealousy, and very easy modes have always been countenanced for defeating them.” (Riggs v Pursell, 66 NY 193, 201; Presby v Benjamin, 169 NY 377, 380 [involving an apartment]; see 1 Rasch, New York Landlord & Tenant [2d ed], § 253, p 330.) The reason is such are restraints on the free alienation of land and tend to prevent full utilization of the land, which is contrary to the best interests of society. (De Peyster v Michael, 6 NY 467, 493.) Such restraints will not be implied and are strictly construed against its drafter, even if expressly stated. (Roe v Great Atlantic & Pacific Tea Co., 46 NY2d 62, 69; Francis v Ferguson, supra; Krasner v Transcontinental Equities, 70 AD2d 312, 316.)
However, under New York case law, where the lease contains an express covenant restricting assignment or sublet without landlord’s prior consent (without being subject to “not unreasonably withheld”), landlord may arbitrarily refuse consent for any or no reason. (Arlu Assoc. v Rosner, 14 AD2d 272, affd 12 NY2d 693; Dress Shirt Sales v Hotel Martinique Assoc., 16 AD2d 899, affd 12 NY2d 339; Allied Control Co. v C.F.A. Graphics, 43 AD2d 678.) This is because a lease agreement, like any other contract, essentially involves a bargain for exchange between the parties. Thus, absent a violation of law or strong public policy, the parties *20 to a contract are basically free to make whatever, agreement they wish, however unwise to a third party. (See Roe v Great Atlantic & Pacific Tea Co., supra, at pp 67, 68.) This court notes that all of the foregoing cases relate to commercial leases only.
It is clear that restriction from or right to subletting included in a lease is a valuable right, both to landlord and tenant, which the courts have protected and enforced. (Glauberman v University Place Apts., 118 Misc 277, affd 272 App Div 758; Mehlman Mgt. Corp. v Meyers, 51 AD2d 949.)
- Yet, the laws, through the courts and the Legislature, has made substantial inroads into feedom of private contracts, including leases and especially residential leases, based upon the equitable belief an enlightened society must to some extent protect its members from the harsh effect of an unchecked society. (See Roe v Great Atlantic & Pacific Tea Co., supra, at p 68.) With regard to residential leases, as herein, modern case law developed that such are essentially contracts based upon interdependent and mutual consideration of rent for shelter and services. (Park West Mgt. Co. v Mitchell, 47 NY2d 316 [including an excellent legal history and analysis by Cooke, Ch. J.]; Tonetti v Penati, 48 AD2d 25; B.L.H. Realty Corp. v Cruz, 87 Misc 2d 258, 260; Steinberg v Carreras, 74 Misc 2d 32, revd on other grounds 77 Misc 2d 774; 57 E. 54 Realty Corp. v Gay Nineties Realty Corp., 71 Misc 2d 353; Morbeth Realty Corp. v Velez, 73 Misc 2d 996; Jackson v Rivera, 65 Misc 2d 468; Javins v First Nat. Realty Corp. 428 F2d 1071, cert den 400 US 925.)
2. STATUTORY INTERVENTION
In addition, there was statutory intervention applicable to residential leases generally and including the right to assign or sublet in particular. Illustrations of statutory intervention covering residential leases are:
(a) Section 234 of the Real Property Law (Tenant’s right to recover attorney’s fees in action or summary proceeding arising out of lease of residential property; L 1969, ch 297, eff July 1, 1969).
*21 (b) CPLR 4544 (Contracts in small print; L 1975, ch 370, eff July 1, 1976, specifically applicable, inter alla, to residential leases).
(c) Section 235-b of the Real Property Law (Warranty of habitability; L 1975, ch 597, eff Aug. 1, 1975, as amd by L 1976, ch 837, eff July 26, 1976).
(d) Section 235-c of the Real Property Law (Unconscionable lease or clause; L 1976, ch 828, eff July 26,1976).
(e) Section 5-702 of the General Obligations Law (Requirements for use of plain language in consumer transactions; L1977, ch 747, eff June 1,1978 — originally numbered § 5-701 and specifically includes residential leases — as amd by L 1978, ch 199, eff May 30,1978).
(f) Section 223-b of the Real Property Law (Retaliation by landlord against tenant; L 1979, ch 693, eff Sept. 1, 1979).
Examples of statutory intervention relating to the right to lease assignment or subletting are:
(a) Section 226 of the Real Property Law (Effect of renewal on sublease; L 1909, ch 52, eff February 17, 1909).
(b) Section 5-331 of the General Obligations Law (formerly Real Property Law, § 259-b: certain covenants and restraints and other agreements affecting real property are void as against public policy; L 1963, ch 576, eff Sept. 27, 1964 [which bars discrimination because of race, creed, color, national origin or ancestry, inter alla, in any lease restriction or assignment] )■.
(c) Section 236 of the Real Property Law (Asssignment of lease of deceased tenant; L 1965, ch 156, eff May 11, 1965, with parallel text as subject Real Property Law, § 226-b except applicable to deceased tenants and estates).
(d) Section 226-b of the Real Property Law (Right to sublease or assign; the subject of this declaratory action).
3. STANDARD OF REASON AND TENANT’S REMEDIES
In New York, even absent statutory intervention, where a lease provision stated that landlord’s prior written consent to an assignment or subletting shall not be unreason *22 ably witheld, the courts’ modern view has imposed a standard of reason upon the landlord. (Arlu Assoc. v Rosner, 14 AD2d 272, 275, affd 12 NY2d 693, supra; see Grossman v Nichols Co., 43 AD2d 674, affd 35 NY2d 985; Roberts, “Property”, 28 Syr L Rev 353, 353-354; cf. Sarner v Kantor, 123 Misc 469.)
So where tenant delivered to a landlord a document binding the proposed subtenant to each and every provision of the prime lease, landlord’s continued objection was held “captious, and consent to the subtenancy is unreasonably withheld in violation of the lease.” (Filmways, Inc. v 477 Madison Ave., 36 AD2d 609, affd 30 NY2d 597.) Where a lease provided that tenant could assign or sublet upon landlord’s consent not to be unreasonably withheld and tenant proposed to assign and sublet upon payment of purchase price’s last installment, summary judgment for landlord was reversed with prevention of the combined arrangement “doubtful.” (Fabulous Stationers v Regency Joint Venture, 44 AD2d 547.) The right of a subtenant to profitably use the premises for a car wash instead of a parking lot due to circumstances beyond the subtenant’s control has been upheld with the sublessor’s refusal to consent to such an assignment deemed unreasonable by the court. (Texaco, Inc. v Greenwich-Kinney, 68 Misc 2d 817, affd in part and mod on other grounds 39 AD2d 877.) Moreover, the landlord’s particular religious, ideological or moral objections to a subletting have been held unreasonable for withholding consent to a subletting or assignment. (American Book Co. v Yeshiva Univ. Dev. Foundation, 59 Misc 2d 31, supra.) The fact landlord’s corporate officer wanted an apartment for his own personal use was held to be arbitrary and unreasonable for corporate landlord’s withholding of consent to a sublease, especially where proposed subtenants had good references. (Matter of Cedarhurst Park Apts. v Milgrim, 55 Misc 2d 118.)
However, landlord’s refusal to consent to a subletting has been held reasonable where proposed sublessee conducted business similar to landlord’s other neighborhood tenants. (Butterick Pub. Co. v Fulton & Elm Leasing Co., 132 Misc 366.) Also, when a tenant proposed multiple tenancies in a *23 “prestige building,” though the proposed subtenants were financially responsible and otherwise acceptable, landlord’s refusal to consent to such a sublet, was held not unreasonable because of the undesirability of multiple tenancies in such a building. (Time, Inc. v Tager, 46 Misc 2d 658.)
For a fine review and analysis of case law in other jurisdictions, including the standard of the reasonably prudent person. (See Ann. [Lessors Consent to Subletting], 54 ALR 3d 679-706.)
Until fairly recently, the standards of “reasonableness” have not been fully and clearly delineated by the appellate New York courts but usually left for the trial court to determine in accordance with the individual facts and circumstances. One New York court did lay out certain conceptual legal criteria, that generally and aptly summarized landlords’ refusal of consent to an assignment or subletting into two broad categories: “objective” and “subjective”. By “objective” is meant those standards, readily measurable of a proposed subtenant’s or assignee’s acceptability from the viewpoint of any landlord, including:
(a) financial responsibility
(b) the “identity” or “business character” of the subtenant, including suitability for the particular building
(c) legality of the proposed use
(d) nature of the occupancy.
By “subjective” is meant the landlord’s supposed needs, dislikes, personal taste, sensibility or convenience, which generally result in judicial disapproval. (See American Book Co. v Yeshiva Univ. Dev. Foundation, 59 Misc 2d 31, 33-34, supra [where Mr. Justice Greenfield of this court outlines cogent and overdue review and analysis]; see, also, Feldman v Simon Bros. Mgt. Co., NYLJ July 9, 1980, p 6, col 6; 54 ALR3d at pp 689-693, supra and respective authorities cited therein.)
Where a landlord has agreed not to withhold consent unreasonably and violates such agreement, the courts have held that the tenant may ignore the restrictive covenant and sublet the premises (Arlu Assoc. v Rosner, 14 AD2d 272, 274, supra; Singer Sewing Mach. Co. v Eastway *24 Plaza, 5 Misc 2d 509; Butterick Pub. Co. v Fulton & Elm Leasing Co., 132 Misc 366, supra), or sue for a declaratory judgment under CPLR 3001 to determine whether such consent was withheld unreasonably (Singer Sewing Mach. Co. v Eastway Plaza, supra; Mann v Steinberg, 188 Misc 652), or possibly maintain an action for damages, if the covenant is that of the landlord (Arlu Assoc. v Rosner, supra; 601 West 26 Corp. v Wiley & Sons, 32 AD2d 522; Singer Sewing Mach. Co. v Eastway Plaza, supra; Matter of Speare v Consolidated Assets Corp., 360 F2d 882; Passaic Distrs. v Sherman Co., 386 F Supp 647), rather than a negative qualification of the tenant’s covenant. (Sarner v Kantor, 123 Misc 469, supra; Mann v Steinberg, supra; Butterick Pub. Co. v Fulton & Elm Leasing Co., supra; accord, English rule, Treloar v Bigge, LR 9 Ex 151; Sear v House Prop. & Inv. Soc., 16 Ch D 387.)
4. GENERAL PRINCIPLES OF STATUTORY CONSTRUCTION
With the common law generally upholding a standard of reason for not unreasonably withholding consent to subletting a brief review of relevant general principles of statutory construction is in order.
It is fundamental that a court in interpreting a statute should attempt to ascertain and effectuate the intent and purpose of the Legislature. (Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38; see Matter of Carr v New York State Bd. of Elections, 40 NY2d 556.) In finding such a purpose, the court should look to the entire statute, the legislative history and the statutes of which it is made a part. (Rankin v Shanker, 23 NY2d 111.) Where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used. (Bender v Jamaica Hosp., 40 NY2d 560; New Amsterdam Cas. Co. v Stecker, 3 NY2d 1; Meltzer v Koenigsberg, 302 NY 523; Matter of De Peyster, 210 NY 216.)
Furthermore, a clear and specific or explicit legislative intent is required to override the common law (Hechter v New York Life Ins. Co. 46 NY2d 34, 39), including property rights. (Thomson Ind. v Incorporated Vil. of Port Washington North, 27 NY2d 537, 539; Matter of 440 East *25 102nd St. Corp. v Murdock, 285 NY 298, 304; Schuman v 250 Tenants Corp., 65 Misc 2d 253, 257.) The original act and any amendment are to be construed together and viewed as one act. (Citibank, N.A. v City of New York Fin. Admin., 43 NY2d 425, 431; Morgan v Hedstrom, 164 NY 224.)
When a heading of a statutory provision is enacted by the Legislature, such may properly be considered to clarify or point the meaning of an imprecise or dubious provision. (Effective Communications West v Board of Coop. Educational Servs. of Sole Supervisory Dist. of Cattaraugus, Erie & Wyoming Counties, 57 AD2d 485.) The statement of a legislative sponsor is of little weight regarding legislative interpretation when not made during floor debate and there is no showing that other legislators were aware of its scope. (Matter of Delmar Box Co. [Aetna Ins. Co.], 309 NY 60, 67.)
5. STATUTORY CONSTRUCTION OF SECTION 226-b OF THE REAL PROPERTY LAW
A. PARTIES’ CONTENTIONS.
This court now turns to subject section 226-b of the Real Property Law, as amended, and its application to subject facts. The thrust of the parties’ contentions is as follows.
Tenant submits there is a broad statutory right to sublease upon tenant’s compliance, as herein, and landlord’s failure or refusal to reasonably withhold consent, as herein. This right, according to tenant, is a branch of the original common-law right to sublet at will, based upon the free alienation of land, in the absence of an express contrary restriction by statute or contract such as a lease, which are not favored by the courts. This right was reinforced by statutory intervention, through section 226-b of the Real Property Law, as amended, under the police power. Such was legislative recognition of a tight residential housing market involving a necessity of life, shelter, creating a severe inequality of bargain-power in favor of landlords. This inequality was reflected in rental apartment leases, now recognized as contracts, by inclusion of an absolute *26 restriction against subletting, which would be a “contract of adhesion” of a valuable right, except for the statutory tenant’s right to sublet under section 226-b, as amended, upon compliance therewith. In support, tenant cites numerous cases in New York and other jurisdictions in an extensive memorandum of law.
In opposition, landlord submits that tenant has a narrow statutory right to a sublease if landlord consents. If landlord does not consent, though unreasonably, section 226-b, as amended, was neither intended to nor gives tenant the right to compel landlord’s consent but only the right to request release from the lease. Since tenant has not requested such a release, the subject action for declaratory judgment should be dismissed, with attorney’s fees awarded to landlord under said lease. Subject sole statutory purpose is to mitigate damages and avoid litigation expense not choose subtenants in landlord’s building, according to landlord. In support, landlord contends that:
(A) Original subdivision 1 of section 226 of the Real Property Law provided in its last sentence that: “If the landlord unreasonably withholds consent for such sublease, he must agree to release the tenant from the lease or accept the sublessee.” (Italics added to indicate deleted text.)
Amended subdivision 1 of section 226 of the Real Property Law provided in its last sentence that: “If the landlord unreasonably withholds consent for such sublease, the landlord must release the tenant from the lease upon request of the tenant.” (Italics added to indicate substituted text.) Thus, landlord vigorously argues, such amendment clearly indicates a legislative intent to restrict tenant’s right to sublease or release upon request and remove any right to compel landlord’s consent.
(B) In fact, this interpretation has been accepted by:
(1) two recent Civil Court decisions in: Pacer Realty Assoc. v Lasky (Index No. L.&T.-32683/1980, Civil Ct. New York County, Housing Part 49, May 29, 1980, Pellagrino, J.) and 39 Remsen Co. v Braune & Saccamano (Index No. L&T.-22397/1980, Civil Ct. Kings County, May 6, 1980, Cohen, J.).
(2) an informational “Rent Stabilization Rider for *27 Apartment House Tenants in New York City”, effective May 6,1980 and approved under RSL section 6.0(d) by the New York City Commissioner, Department of Housing Preservation and Development, which reads as follows:
“SUBLETTING
“The owner has the right to grant a tenant permission to sublet or, upon request, to cancel the lease. If the lease does not give the tenant permission to sublet, the owner may refuse such permission. However, where the owner is not required by the lease to permit subletting, the tenant may be entitled to sublet or have the lease cancelled by following the steps set forth in Section 226-b of the New York State Real Property Law.”
(3) Assemblyman Charles E. Schumer, cosponsor of section 226-b, both originally and as amended, was quoted apparently in The New York Times in an undated article entitled, “To Sublet or Leave is a Right by Law” by Charles Kaiser as follows: “The intent, and I think the effect, of the law is not to allow tenants to hang on to their apartments but rather to help the tenant who is hard pressed to get out * * * It puts, the obligation on the tenant to find a sublessee but it doesn’t require the landlord to take him.”
B. LEGISLATIVE HISTORY
According to the 1975 New York State: Legislative Index; Legislative Annual; Assembly and Senate journals, the legislative history of section 226-b, both original and amended, indicates the following action:
1. The original bill (A. 849, S. 925 [1975 Legis Session] ) was jointly introduced by Assemblyman Charles E. Schumer (Dem.-45th Asm. Dist.-Kings County) and Senator Donald M. Halperin (Dem.-20th Sen. Dist.-Kings County) on January 8, 1975 (“original § 226-b”). A brief supporting Memorandum of Senator Donald M. Halperin, reads as follows:
“Subleasing
S.925-C, Halperin
A.849-C, Schumer
“Real Property Law: adds § 226-b. This bill provides *28 that a tenant shall have the right to sublease his premises with the consent of the landlord.
“Housing shortages and inequities to tenants may be alleviated by this bill through the allowance of a tenant to sublease his premises when they are not in use.” (NY Legis Ann, 1975, p 305; italics added.)
2. Original section 226-b, after referral to respective judiciary committees, was thrice amended, accounting for the “-C” additions to respective introductory numbers, on March 10, April 10 and 15, 1975 in the Assembly and on April 15, May 7 and 15, 1975 in the Senate. Without any recorded debate, according to the 1975 Assembly and Senate journals, original section 226-b passed the Assembly (111-32) on May 14, 1975 and the Senate (35-13) on May 19,1975. On May 22,1975, original section 226-b was sent to Governor Hugh L. Carey, who signed same on June 3, 1975, effective immediately. (L 1975, ch 146.)
3. Approximately two weeks later, on June 18, 1975, amended section 226-b was jointly introduced (S.6805 [Halperin], A.8679 [Schumer]) by the same State Senator Halperin and Assemblyman Schumer. A supporting Memorandum of State Senator Halperin for amended section 226-b follows:
“Subleasing, clarification
S.6805, Halperin
A.8679, Schumer
“Real Property Law: § 226-b. This bill makes certain additions to Chapter 1^6 of the Laws of 1975: 1) The written consent of any co-tenant will be required with any request for a sublease. 2) Such request shall include a statement of the name, business and home address of the sublease. 3) Within ten days after the mailing of the request the landlord is authorized to ask for additional information. 4) Subleases will be prohibited for private premises where the stock is owned on a cooperative basis.
“Chapter 146 of the Laws of 1975 added section 226 [sic] to the real property law and granting tenants the right to sublease. The amendments would benefit both land *29 lord and tenant by stating in clearer language the obligations of both parties.” (NYS Legis Ann, 1975, p 305; italics added.)
4. Amended section 226-b, referral to respective Rules Committees and reported out therefrom, was, without any recorded debate, according to the 1975 Assembly and Senate Journals, passed by the Senate (47-1) on June 27, 1975 and by the Assembly (147-0) on July 9, 1975. The bill was sent, on July 11, 1975, to Governor Carey, who signed amended section 226-b into law on July 29, 1975, effective immediately. (L 1975, ch 548.)
C. court’s interpretation and findings
In interpreting section 226-b, as amended, and seeking to effectuate, its legislative intent, this court, where statutory language is clear and unambiguous, should construe the plain meaning of the words used. (Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208, 209.) In this regard this court notes and finds:
1. The statutory section for section 226-b, both original and amended, is entitled, “Right to sublease” with subdivision 1 in its very first sentence stating: “A tenant renting a residence * * * shall have the right to sublease his premises, subject to the written consent of the landlord given in advance of the sublease” followed immediately by:
“Such consent shall not be unreasonably withheld.” (Italics added.)
The above unchanged statutory language with qualification is consistent with and confirms the common-law rule of an unrestricted right to sublet at will, in the absence of contract or statute. (Eten v Luyster, 60 NY 252, supra; Fleisch v Schnaier, 119 App Div 185, supra.) It is further supported by the legislative supporting memoranda of Senate sponsor, Donald M. Halperin that states: “This bill provides that a tenant shall have the right to sublease his premises with the consent of the landlord.” (Italics added; see memorandum of Senator Donald M. Halperin, to original § 226-b, 1st sentence, NY Legis Ann, 1975, p 305.) “Chapter 146 of the Laws of 1975 added section 226 [-b] to the real property law and granting tenants the right to *30 sublease.” (See, memorandum of Senator Donald M. Halperin, to amended § 226-b, par 2, 1st sentence, NY Legis Ann, 1975, p 305.)
Said legislative memorandum to amended section 226-b, termed amended section 226-b a “clarification” which “makes certain additions to” original section 226-b. Neither legislative memorandum refers to the language that landlord “accept the sublessee” in original section 226-b or its deletion from amended section 226-b. This appears to negate any substantive significance by such deletion, as claimed by landlord.
2. Section 226-b, both original and amended, provides that tenant’s right to sublease is subject to landlord’s prior written consent which shall not be “unreasonably” withheld and, if so, the landlord must release tenant from the lease but only, added by amended section 226-b, “upon request of the tenant.” The plain meaning is that the right to release is clearly only at the tenant’s, not the landlord’s, option. If, as contended by landlord contrary to the clear statutory language, a landlord can simply state, “No!” or veto a proposed sublessee, without a reason, and forward tenant a release from the lease, it was unnecessary to include the sentence, “Such consent shall not be unreasonably withheld” nor the adjective “unreasonably” in the last sentence, both of subdivision 1 of amended section 226-b.
3. Moreover, amended section 226-b, added, in subdivition 2, that 10 days after tenant’s request for a sublease, landlord may ask for additional information to determine if rejection “shall be unreasonable” and that thirty days after tenant’s request or landlord’s additional information “reasonably” asked for, landlord shall send a notice of consent or, if not, “his reasons therefore.” (Italics added.)
As noted above, these statutory references to and requirements of the “rule of reason” are consistent with the common law (Arlu Assoc. v Rosner, 14 AD2d 272, 275, supra, affd 12 NY2d 693), which the statutory language does not, much less clearly, specifically or explicitly, override. (Hechter v New York Life Ins. Co., 46 NY2d 34, supra.)
4. In addition, amended section 226-b, in subdivision 2 *31 following the sentence ending with “his reasons therefore” immediately continues with the sentence, “Landlord’s failure to send such a notice shall be deemed to be a consent to the proposed subletting”. The latter sentence was substituted for the sentence in originalsection 226-b, “If * * * no such notice is mailed, the landlord is deemed to have consented to the sublease.” This follows the sentence, in original section 226-b, “the landlord must notify the tenant of his consent or lack thereof”, without any reference to “reasons therefore.”
The word, “such” when used in a statute must, to be intelligible, refer to some antecedent usually the last in context unless some compelling contrary reason appears. (American Smelting & Refining Co. v Stettenheim, 177 App Div 392; 56 NY Jur, Statutes, § 146, p 617.)
Thus, while landlord’s argument may be plausible to original section 226-b wherein “such” refers to “consent or lack thereof”, it defies common sense or the plain meaning of “such” in amended section 226-b which clearly refers to “consent or * * * his reasons therefore.” (Italics added.)
5. It is this subdivision 2 in amended section 226-b, the supporting legislative Memoranda of Senate sponsor, Donald M. Halperin, and their plain meaning all of which provide for “rule of reason” that the Housing Court Judge in Pacer Realty Assoc. v Lasky (supra [unreported]) and the Civil Court Judge in 39 Remsen Co. v Braune & Saccamano (supra [unreported]) as well as the undated press statement, though of little weight, of Assembly sponsor Schumer, all totally overlook to reach, in this court’s view, an invalid conclusion. Neither subject statute, original or amended, nor the Senate sponsor’s legislative memoranda in support thereof mention the right or duty to mitigate damages or litigation expenses. While a possible secondary purpose or natural consequence, this is clearly not the primary purpose of section 226-b, original or amended.
Most recently, the court, under section 226-b, as amended, properly granted a declaratory judgment for mutual subleases, involving an apartment swap in the same building, when landlord refused to give “a single factual reason” for withholding consent to the subleases. (See Feldman v Si *32 mon Bros. Mgt. Co., NYLJ, July 9, 1980, p 6, col 6, supra.)
The “rule of reason” is not inconsistent with a careful reading of the recently approved informational RSL apartment lease rider, effective May 6, 1980, which discusses tenant’s options but cannot and does not presume to limit tenant’s rights thereunder, including judicial review and the right to a declaratory action and judgment.
6. As noted above, before enactment of section 226-b, there was little question, at common law in New York, where landlord agreed that consent to a sublet or assignment shall not be unreasonably withheld, ‘objective’ reasons were necessary. (See Arlu Assoc v Rosner, supra; American Book Co. v Yeshiva Univ. Dev. Foundation, 59 Misc 2d 31, supra; see Meehan, 11 McKinney’s Forms, Real Prop. Prac. § 6:246F, comment and form, pp. 261-264 [Cum. Annual Pocket, 1979-80]; 1 Rasch, New York Landlord and Tenant, § 251.5, summarizing section 226-b, as amd [Cum. Sup., Feb., 1980].) A clear, specific or explicit intent is required to override the common law. (Hechter v New York Life Ins. Co., 46 NY2d 34, supra.) Original and amended section 226-b not only not override but, according to their above-cited legislative Memoranda, confirm the common law.
7. Finally, as a matter of common sense and “plain language” also known as ‘plain English’(General Obligations Law, § 5-702), still applicable to legislatures and courts, section 226-b, if intended as landlord contends, would have simply provided that within 30 days after receipt of tenant’s request or intent to sublet, if landlord withholds consent, then tenant or landlord shall have the right or option to cancel the lease and both sides shall exchange general releases or be deemed to have generally released each other from the lease. On the contrary, section 226-b, as amended, barred “unreasonable” withholding of consent and required “reasons therefore.” This clearly, plainly and unambiguously negates landlord’s veto of a sublessee in exchange for a general release to tenant from the lease.
6. DAMAGES AND MISCELLANEOUS CLAIMS
It appears clear to this court’s reading of subject lease *33 paragraph 18.(A), especially as amended by rider paragraph 31, with references to tenant’s, as distinct from landlord’s, agreement, indicates such restriction against subleasing is a tenant’s covenant with a negative qualification by landlord under section 226-b. Accordingly, tenant is not entitled to damages (see Arlu Assoc. v Rosner, 14 AD2d 272, supra; Mann v Steinberg, 188 Misc 652, supra; Sarner v Kantor, 123 Misc 469, supra) and this claim is dismissed.
Similarly, since tenant, in the instant facts, has not breached any covenant or agreement of the lease, nor has landlord, validly or otherwise, commenced any legal action or “dispossess” proceedings, landlord is not entitled to attorney’s fees and an inquest therefor, under subject lease or law. Thus, landlord’s claim herein is likewise dismissed.
As noted above, the right to, or restrict, a sublease is a valuable right to both landlord and tenant. (See Glauberman v University Place Apts., 188 Misc 277, supra; Mehlman Mgt. Corp. v Meyers, 51 AD2d 949, supra.) Moreover, this court takes judicial notice of the fact (Hunter v New York, Ontario & Western R. R. Co., 116 NY 615) that in New York County, generally, and in the Madison Square-Murray Hill sections thereof, particularly (where subject apartment is located), there has been and still is a serious shortage of well-maintained residential apartments at reasonable rents. (See Report of the New York State Temporary Commission on Rental Housing, March, 1980). Surely, subject rent-stabilized apartment is a valuable asset as well as a right in inflationary 1980. Thus, this court, in the interests of justice and equity, will not allow either party to profit from this declaratory action, under CPLR 3001, for a bona fide sublease. This would be contrary to the true purposes of section 226-b, as amended.
F. FINDINGS OF FACT AND CONCLUSIONS OF LAW
After careful consideration and review of all papers, pleadings, proceedings and applicable law, this court finds and declares:
1. (a) Under section 226-b of the Real Property Law, as amended, upon tenant’s compliance (by sending a notice *34 of intent to sublease, including sublessees’ names, home and business addresses and all other applicable requirements, and requesting landlord’s consent, by registered or certified mail), and within 30 days after such tenant’s request or landlord’s reasonable request for additional information, whichever later, landlord is required to notify tenant of landlord’s consent or, if not, landlord’s reasons therefor.
(b) Such reason(s) to negate an unreasonable withholding of consent, under section 226-b, shall be factual and objective based upon the proposed sublessee (s) ’ financial responsibility, identity or suitability for the particular apartment or building, legality of the proposed use or nature of the occupancy or any other sound real estate business, excepting loss of profit or property control. The foregoing applies only .to a sublease, at issue herein as distinct from an assignment, which this court does not pass upon.
2. Tenant herein has duly complied with the requirements of section 226-b, as amended, by mailing, by certified mail a notice of intent of sublease, dated May 6,1980.
3. Landlord’s response, dated May 15, 1980, stating: “Please be advised that we do not grant you permission to sublet the apartment. We do not choose to have apartments passed from hand to hand” was an unreasonable withholding of consent, under section 226-b, as amended.
4. Landlord’s said response, dated May 15, 1980, shall be deemed, as a matter of law under section 226-b, as amended, a consent to tenant’s request for a sublease to the proposed sublessees only, subject to tenant’s timely compliance with all of the other terms, covenants and conditions of subject lease, dated July 30, 1979, by and between landlord and tenant, and paragraph 5 hereinbelow.
5. (a) Simultaneously with the settlement of the order and declaratory judgment herein, tenant shall duly deliver to landlord a true or photocopy of the duly executed sublease, from tenant to the proposed sublessees, Mr. and Mrs. Kenneth Schnide, at a rent not to exceed the rent required to be paid under tenant’s subject lease, dated July 30,1970, subject to RSL adjustments, for a term ending no later *35 than October 30, 1982 (one day prior to the end of tenant’s current term), with a request for consent thereof.
(b) Within 10 days thereafter, landlord shall return its consent thereof or shall be deemed to have so consented, as a matter of law, under section 226, as amended.
(c) Tenant shall remain liable for the performance of all terms, covenant and conditions, except as set forth in paragraph 5(b) hereinabove.
6. All claims for damages by tenant and landlord herein are dismissed, with prejudice.
Accordingly, upon the foregoing reasons, tenant is granted declaratory judgment to the extent and upon compliance with the conditions set forth hereinabove, and landlord’s motion to dismiss tenant’s action is denied.