OPINION OF THE COURT
Edward H. Lehner, J.
This is another of the plethora of cases instituted in this court requiring an interpretation of section 226-b of the Real Property Law to determine whether a tenant of a residential unit is entitled to sublease or assign. With such volume of cases, this court is fast becoming an annex of the Housing Part of the Civil Court, which should lead to *945 legislative consideration of the grant of additional jurisdiction to that court so that all issues relating to residential use of property can be determined in one forum.
This action was instituted by the simultaneous service of an order to show cause, moving affidavits and a summons and complaint. The complaint seeks a judgment pursuant to CPLR 3001 declaring that plaintiff has the right to sublease her apartment as requested and also to enjoin defendants (the owner and managing agent of premises, 293 Riverside Drive) from refusing plaintiff permission to so sublease. The order to show cause seeks relief identical to that prayed for in the complaint.
FACTS
Plaintiff is lessee of an apartment for a period expiring June 30,1982 at a rental of $304.75 per month. She states that she has been invited to complete her doctoral studies at Oxford University in England and will be teaching there during the university year that commenced in October. On August 4, she wrote to the landlord requesting permission to sublease her apartment pursuant to section 226-b of the Real Property Law to John W. Rindlaub and Eveline Sprenger. On August 12, she received a letter from the landlord’s attorney acknowledging receipt of the request and enclosing a 10-page questionnaire, half of which sought detailed credit and other information from the proposed sublessees and the balance sought such information from the plaintiff.
Plaintiff declined to provide any information regarding herself and in lieu of having the sublessees complete the questionnaire, plaintiff’s attorneys forwarded to defendants’ attorneys a letter dated September 9, enclosing (1) the proposed sublease containing a guarantee by Mr. Rindlaub’s father, (2) a letter from Mr. Rindlaub’s employer indicating his salary was $22,000 and that he was “an employee in good standing”,. (3) a letter from Mr. Rindlaub’s bank indicating that he has maintained a savings and checking account “in a highly satisfactory manner”, (4) two personal reference letters for Mr. Rindlaub and (5) a letter from Ms. Sprenger’s employer vouching for her character, but not indicating her salary.
*946 The sublease is for the period from September 25,1981 to June 25,1982 at a rental of $348.42, which is $43.67 (about 14%) above the rent payable to the landlord.
By letter dated September 18, the landlord indicated that it would not process the application because of the tenant’s refusal to complete the questionnaire. Shortly thereafter this action was instituted.
plaintiff’s position
Plaintiff argues that as a rent-stabilized tenant she was not required to answer any questions concerning her own financial status and that prior court decisions have held that the information supplied with respect to the proposed subtenant was adequate in order to obtain the landlord’s approval.
defendant’s position
As a matter of procedure, defendants argue that the instant motion is premature as their time to answer the complaint had not expired as of the return date of the motion.
On the merits, defendants claim that “it is entirely logical for the landlord to inquire into the reasons for the request to sublet, and the financial ability of the prime tenant who will be responsible under the lease, as well as the subtenant, to fulfill the obligations of the lease” and since the tenant refused “information reasonably requested”, she is not entitled to the relief sought herein.
RELEVANT STATUTE
Subdivision 1 of section 226-b of the Real Property Law provides that a tenant of residential space in a building having four or more dwelling units “shall have the right to sublease or assign his premises, subject to the written consent of the landlord” which consent “shall not be unreasonably withheld”.
Subdivision 2 of the section states that a landlord who has been requested to approve a sublease or assignment may ask the tenant “for additional information as will enable the landlord to determine if rejection of such request shall be unreasonable”. The. subdivision further provides that within “thirty days after the mailing of the *947 request for consent, or of the additional information reasonably asked for by the landlord, whichever is later”, the landlord shall send a notice to the tenant informing him of his consent or his reasons for not granting same.
PROCEDURAL OBJECTIONS
Normally when seeking a preliminary injunction a movant must clearly show (1) the likelihood of ultimate success, (2) irreparable harm and (3) a balancing of equities in his favor (Albini v Solork Assoc., 37 AD2d 835).
As observed by Justice Blyn in Bragar v Berkeley Assoc. Co. (NYLJ, Nov. 4, 1981, p 6, col 1), in the leading case on the interpretation of section 226-b (Conrad v Third Sutton Realty Co., 81 AD2d 50) the court granted the requested injunctive relief to a tenant who brought on her motion in the same manner as has the plaintiff herein without alleging facts to establish the foregoing requisites for the granting of a preliminary injunction. The court in Bragar therefore concluded that the approach of the Appellate Division in Conrad was similar to that on a motion for summary judgment — that is, granting plaintiff relief if he is entitled thereto as a matter of law. This court agrees that such is what essentially was done in Conrad as well as in the subsequent case of Foltin v 2 Horatio (NYLJ, July 29,1981, p 6, col 6).
What, however, of the requirement of CPLR 3212 that a motion for summary judgment may only be granted after joinder of issue? The answer is that in these sublease cases where a prompt determination is necessary and all the parties are before the court and have stated their positions, certain technicalities are disregarded. As said in Szumega v Kaskel (NYLJ, Nov. 4, 1981, p 14, col 6) it is preferable in such instances in the “interest of justice and judicial economy” to adjudicate the matter “summarily rather than compel the parties to proceed with the unnecessary procedure of formally moving for summary judgment”. (See, also, Gill v Logan, 62 AD2d 1029; Matter of Kovarsky v Housing & Dev. Admin. of City of N.Y., 31 NY2d 184.)
Hence, this court will consider on the merits the sole issue presented by the affidavits, i.e., whether plaintiff was obligated to provide the information requested by the defendants.
*948 THE OBLIGATION TO PROVIDE FINANCIAL DATA
At the outset it should be observed that although the financial information requested by defendants was somewhat detailed, it was not particularly burdensome and would not have taken a great deal of time to compile. However, plaintiff chose to take the risk of testing a tenant’s obligation under the statute.
Contrary to the claims of plaintiff, the nature of the “additional information” that a landlord may reasonably request has not been decided under any of the cases interpreting section 226-b of the Real Property Law cited by her. In both Conrad and Foltin (supra), relied upon by plaintiff, the landlord did not request any financial information, but without supplying any reason declined to consent. Such failure was deemed a consent. Thus, the issue as to the sufficiency of the information provided by the tenants was not before the court.
In the Bragar case (supra), the court found that although the tenant did not complete the financial questionnaire requested of him, he did supply the information demanded in a different form by means of a separate financial statement.
Independent research has not located any authority interpreting the statute with respect to the type of “additional information” that can be demanded. The word “additional” is used because the prior sentence of subdivision 2 of section 226-b requires a tenant requesting consent to furnish “the name, business and home address of the proposed sublessee”.
DATA WITH RESPECT TO THE TENANT
The court believes that the plaintiff is correct in refusing to complete the questionnaire with respect to her finances or reason for subletting.
Although financial information may properly be requested by a landlord of a prospective tenant, of what significance is such information in considering whether to approve a sublease? The tenant is already obligated to pay the rent for. the balance of the term. The income from a sublease can only be financially helpful to a tenant, although if the subtenant defaulted, the tenant would have *949 the burden of paying for an apartment not being used and thus would be paying rent at two locations. Such contingency should not result in permission to request such information. Further, a short-term temporary absence would not deprive plaintiff of her status as a tenant under the Rent Stabilization Law and upon her return she would be entitled to renew her lease as provided under such law.
Regarding the inquiry as to her reason for subletting, there is nothing in the statute that requires that a reason be offered. The statute authorizes both a sublease (less than for the full term) and an assignment (for the full term). The requirement stated in Conrad that the sublease be bona fide cannot be determined from the term or reason therefor.
Thus the court finds that the landlord could not reasonably ask for the information requested of the tenant.
FINANCIAL INFORMATION AS TO THE SUBLESSEES
Here the only financial information provided with respect to the two proposed sublessees was that one of them was earning $22,000 per annum. Since the rental provided under the sublease is approximately $4,200 per year, having income five times the amount of rent would indicate sufficient income to carry the apartment. However, because of the refusal to supply any other financial data there is no way of knowing the extent of debts owing by either subtenant. If heavy outstanding obligations exist they could prevent the sublessees from meeting their obligations under the sublease. The guarantee by the father of one of the sublessees is close to meaningless because of the failure to supply any information with respect to his finances.
Thus, if an obligation exists to provide financial information, I find that the data supplied by the proposed sublessees to be inadequate.
That leads the court to the inquiry as to whether financial information relating to a subtenant is pertinent to a landlord’s decision on the issue of consent and whether a poor financial condition would justify a refusal.
A subtenant is not in privity of contract or privity of estate with the landlord (Stewart v Long Is. R.R. Co., 102 *950 NY 601; Century Paramount Hotel v Rock Land Corp., 68 Misc 2d 603) and thus is not liable to the landlord for performance of any of the convenants of the major lease (Tefft v Apex Pawnbroking & Jewelry Co., 75 AD2d 891). The sublessee’s obligation is to the sublessor, who under common law and the specific language of the last sentence of subdivision 2 of section 226-b, remains personally liable to the landlord under the main lease.
Since the statutory interpretation in Conrad is in essence that a landlord may object to a sublease only if he has “reasonable” grounds to do so, the court, in the absence of any statutory or decisional authority defining the “additional information” that may be requested under section 226-b, will look to common-law authority interpreting contractual obligations to not unreasonably withhold con: sent for guidance in the determination of the nature of financial information (if any) that may be reasonably requested of the sublessee.
On this question Mr. Justice Greenfield in American Book Co. v Yeshiva Univ. Dev. Foundations (59 Misc 2d 31, 33) found: “The standards of ‘reasonableness’ have not heretofore been clearly delineated by any single New York case, but are left to the trial court to determine in accordance with the particular factual patterns before it, and the conceptual boundaries may be only faintly discerned in the few reported cases.” In an excellent analysis, he concluded, that the purported reasons for a landlord’s refusal to consent fall into two broad categories — objective and subjective, the former being (supra, p 33):
' “those standards which are readily measurable criteria of a proposed subtenant’s or assignee’s acceptability, from the point of view of any landlord:
“(a) financial responsibility
“(b) the ‘identity’ or ‘business character’ of the subtenant — i.e. his suitability for the particular building
“(c) the legality of the proposed use
“(d) the nature of the occupancy — i.e. office, factory, clinic, or whatever.”
*951 Subjective criteria is based on the supposed needs or dislikes of a particular landlord, a standard which public policy has been known to abhor.
In Time, Inc. v Tager (46 Misc 2d 658), the court pointed out that financial responsibility, respectability and the character of the business are factors to be taken into account. Similarly, in Wiggins v Fane (71 AD2d 1039) it was held that the financial stability and the troublesome nature of the proposed sublessee are germane to the issue as to whether the landlord has unreasonably withheld consent. (See, also, Tsimis v Rudnick, Brett, Wyckoff, 59 AD2d 871, affd 45 NY2d 976; Kruger v Page Mgt. Co., 105 Misc 2d 14.)
Thus, while there are several cases that mention the financial stability of the proposed sublessee as a consideration in determining whether the landlord acted reasonably in rejecting him, there is a paucity of discussion as to why, in light of the continued liability of the sublessor and the lack of privity of contract between the sublessee and the landlord, such information is significant.
To decide whether there is need for financial disclosure by the proposed subtenant, it is important to consider the practicalities of any given situation. In the instant case, the prime tenant’s reason for seeking a sublease is the recent invitation to complete her doctoral studies in England. It is obvious that this tenant will have great difficulty in enforcing the covenants contained in the sublease since she will be 3,000 miles away. The covenants in the sublease agreement are somewhat similar to those contained in the main lease. The tenant’s failure to enforce these covenants will, in turn, result in a violation of the main lease, thus directly affecting the landlord. The best illustration is the prompt payment of rent. If the subtenant fails to timely pay the tenant, the tenant will have to lay out her own money to cover the rent until she receives payment. The great distance involved in the present situation exacerbates the tenant’s ability to cure a default on the part of subtenant. Therefore, the subtenant’s failure to pay the rent may result in either a delay or nonpayment of the rent by the prime tenant. Since enforcement of the lease against a person residing in Europe will be difficult *952 to say the least, the failure of the sublessee to honor the sublease may well cause a loss of rental for the period it takes to evict the tenant and subtenant.
Furthermore, if the subtenant should damage the apartment, the subtenant (although not in privity with the landlord) would nevertheless be liable under common-law concepts for negligent or willful damage to property.
In Popovic v Florida Mechanical Contrs. (358 So 2d 880, 884-885 [Fla]), the court found: “it [is] axiomatic that the landlord has the right to expect reasonably prompt and reliable performance of all lease covenants — rental payments being only one — and that this is directly related to the evidence as to the dependability, solvency and stability of the actual occupant.”
From the foregoing, it is apparent that most violations of the sublease by the subtenant will directly affect the landlord. If the landlord is directly affected by the actions of the subtenant, does it not make sense to allow inquiry of the subtenant beyond name, business and home address? This court is of the opinion that it does.
INFORMATION TO BE SUPPLIED
Given the need for financial data with respect to the subtenant, what should the parameters be within which a landlord may be free to inquire? It would seem that in addition to income, inquiry may properly be made with respect to the assets and liabilities of the subtenant, in essence a “balance sheet” presentation. Further, any information concerning the subtenant’s prior residences and how he conducted himself is relevant.
CONCLUSION
This court finds that the landlord has not unreasonably withheld consent to the sublease. The forms submitted sought relevant financial information of the subtenant. In light of the absence of prior guidelines on this issue and because the landlord improperly requested financial information with respect to the tenant, the tenant shall now be permitted to have the form completed with respect to the subtenant and returned to the landlord within 20 days after service of a copy of the order to be entered herein with *953 notice of entry. The landlord shall then have 20 days after submission of the completed form to either reject or accept the proposed subtenant pursuant to section 226-b of the Real Property Law.