A. MAY CONDIT, Plaintiff, v. MEYER V. MANISCHEWITZ, Defendant.

First Department, April 22, 1927.

Landlord and tenant — lease — option to renew — sublease of entire premises by tenant amounted to assignment — landlord waived right to cancel lease for failure to secure consent to assignment by accepting rent thereafter with full knowledge — original tenant had right to accept option and renew lease for benefit of assignee.

The original lease involved in this action provided that the tenant could renew the lease by exercising an option therein within the time specified. The lease also provided that it could not be assigned without the consent of the landlord. A sublease of the entire premises executed by the tenant without the landlord's consent amounted to an assignment in violation of the terms of the lease, but the landlord waived her right to demand possession by accepting the rent for the premises with full knowledge that the premises had been sublet by the tenant. The landlord's ratification is not impaired by a provision in the lease that the failure of the landlord to insist upon strict performance should not be construed as a waiver in the future of any such covenant.

The original tenant had the right to exercise the option to renew within the prescribed time for the benefit of the subtenant, although at the time the option was exercised the premises had been sublet. The mere fact that the original tenant did not state in the notice of renewal that he was acting for the subtenant does not make the notice ineffective as to the subtenant.

Accordingly, the option to renew having been exercised within the time stipulated, the landlord was not entitled to possession of the premises upon the expiration of the original term.

MERRELL, J., dissents, with opinion.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

Charles F. Bailey of counsel [Abram I. Elkus with him on the brief; Gleason, McLanahan, Merritt & Ingraham, attorneys], for the plaintiff.

Maurice Finkelstein of counsel [Finkelstein & Welling, attorneys], for the defendant.

PER CURIAM. Plaintiff succeeded to the rights of Mabel R. Sherman, who leased to the defendant certain premises at 600–602 West One Hundred and Thirty-first street for a term ending March 31, 1926. The lease provided that the tenant should have an option to renew the lease for five years from April 1, 1926, upon giving written notice of intention to exercise the option six months prior to April 1, 1926. It contained also a covenant by the tenant not to assign without the landlord's consent and providing that in the event of an assignment with the landlord's consent the tenant would deposit $5,000 as additional

security and that the assignee should assume the performance of the lease. On July 25, 1917, the defendant leased the entire premises to Morris Workin and Isaac Workin for the entire term of the lease, including the renewal period, and the defendant covenanted in that lease " to exercise his option for the renewal of his original lease with his landlord, pursuant to the terms of his lease." In October, 1917, the Workins sublet the premises for the entire term to the W. G. Corporation. The two last-mentioned instruments were recorded on March 4, 1921. On October 11, 1922, the defendant served a written notice exercising his option to renew the lease. Since October 21, 1925, the plaintiff has continuously received and accepted rent from the defendant with full knowledge of all these facts.

Plaintiff asks judgment awarding her possession of the property at the end of the initial term. The sublease made by the defendant was in legal effect an assignment made in violation of the terms of the lease. (*Gillette Bros.* v. *Aristocrat Restaurant*, 239 N. Y. 87, 90.) Plaintiff would have been justified in demanding possession of the premises by reason of this breach. But she clearly waived this right and adopted and ratified the assignments by the acceptance of rent with full knowledge (2 Williston Cont. 1327, § 687; *Leibowitz* v. *Bickford's Lunch System*, 241 N. Y. 489, 499.) This ratification is not impaired by the provision in the lease that the failure of the landlord to insist upon strict performance " shall not be construed as a waiver or relinquishment for the future of any such covenant, condition or option." That provision relates only to the right of the landlord to demand future performance of any covenant of the tenant's despite any waiver of past performance thereof.

Plaintiff contends, however, that inasmuch as the lease was assigned, the right of renewal rested in the assignee and not in the defendant and that the defendant's notice of exercise of the option was, therefore, inoperative. All the authorities relied on by the plaintiff involve controversy between the lessee and his assignor as to the right to the renewed term. Here the lessee exercised the option as agent for his assignee pursuant to his covenant so to do. It would be inequitable in the extreme to permit the plaintiff to avoid the consequences of her covenant to renew merely because the lessee omitted to state in his notice that he was acting for the assignee. The plaintiff has sustained no prejudice by reason of this omission or by reason of the failure of the defendant and his assignees to record the so-called subleases immediately.

We conclude, therefore, that the option to renew the lease was

validly exercised for the benefit of the defendant's assignee. Neither that assignee nor his assignee, however, is a party to this submission. There is nothing in the submission which advises the court whether the assignee is claiming the renewed term. In no view of the case can the defendant be entitled to it, and if any real controversy exists, it is not between this plaintiff and the defendant, but between the plaintiff and those claiming under the defendant.

For these reasons we have reached the conclusion that the submission should be dismissed, without costs.

Present — Dowling, P. J., Merrell, McAvoy, Martin and Proskauer, JJ.; Merrell, J., dissents.

Merrell, J. (dissenting). From the agreed statement of facts herein it appears that on or about November 24, 1915, one Mabel R. Sherman, the then owner of premises on the southwest corner of One Hundred and Thirty-first street and Broadway, in the borough of Manhattan, city of New York, known as Nos. 600–602 West One Hundred and Thirty-first street, entered into a written agreement of lease whereby the said owner leased the said premises, together with all the machinery thereon belonging to the said owner, to the defendant, Meyer V. Manischewitz, as tenant, for the term of ten years and four months, said term to commence on December 1, 1915, and to end on March 31, 1926. Under the terms of said written lease, for the first four months of the term the defendant was to pay to the lessor such amount or amounts as might be due and payable to the defendant as tenant from the persons occupying any part of said building during the said four months. For the remaining ten years of the term the defendant was to pay an annual rental of $7,000 in equal monthly payments in advance, to be made on the first day of each and every month, of $583.33. The lease further provided that the tenant was to pay the rent and each and every installment thereof as the same fell due. By paragraph 3 of said lease it was provided as follows:

" *Third.* The Tenant shall not mortgage nor assign this agreement without the Landlord's consent in writing, and any assignment of this lease, if made, by the Tenant or by any assignee shall be deemed to be subject to this, as well as to the other terms, covenants and conditions of this lease, and no assignment shall be deemed a waiver in whole or in part of this clause, whether such assignment be made with or without the consent of the Landlord, except that the Tenant herein may assign this lease to any person or corporation, said person or corporation to be satisfactory in all respects to the Landlord in her absolute discretion, and to be accepted by the Landlord in writing, as a tenant. In the event

that the Tenant herein shall assign said lease, prior to said assignment and before said Landlord shall consent to the same, said Tenant shall deposit with the Landlord as security for the faithful performance of all the covenants, terms and conditions of this lease, an amount sufficient to bring the sum held by the Landlord as security hereunder up to the sum of Five thousand ($5,000) Dollars, said amount to be deposited with the Landlord or her attorneys as security for the faithful performance of all the terms, covenants and conditions of said lease, and upon the same terms and conditions as the security hereinafter provided to be given to the Landlord, is deposited with said Landlord, and upon the delivery of said amount and the assignment of the lease the Tenant herein shall be discharged from all liability thereunder. Any assignee of this lease shall assume the performance of each and all the terms, covenants and conditions of this lease."

By the 9th paragraph of the lease it was provided:

" *Ninth.* In case of the default in any of the covenants or conditions herein contained the Landlord may resume possession of the premises either by force or otherwise, and the same to have again, re-possess and enjoy. In case of such re-possession, or if the premises become vacant, or the Tenant be dispossessed by summary proceedings, the Landlord may re-let the premises for the remainder of the term for account of the Tenant, who agrees to make good any deficiency, including the expenses of the Landlord in re-entering. * * *."

The 22d paragraph of said lease provided as follows:

" *Twenty-second.* The Tenant shall have the option to renew this lease for the period of five (5) years from the first day of April, 1926, upon the same terms and conditions as in this lease provided except as to amount of rent to be paid, provided that he serve upon the Landlord a written notice of his intention to exercise said option at least six months prior to April 1, 1926. In the event that said Tenant shall exercise said option he shall pay the yearly rent of Seventy-five hundred ($7500) Dollars in equal monthly installments in advance, payable on the first day of each and every month of said renewal term, and shall perform for said renewal period all the terms, covenants and conditions of this lease and shall have the same privileges thereunder except the privilege of renewal."

The 23d paragraph of the lease provides as follows:

" *Twenty-third.* The failure of the Landlord to insist upon strict performance of any of the covenants or conditions of this lease, or to exercise any option herein conferred in any one or more

24

instances, shall not be construed as a waiver or relinquishment for the future of any such covenant, condition or option, but the same shall be and remain in full force and effect."

On April 3, 1917, the said Mabel R. Sherman, the owner of said real property who had executed the said lease thereof to defendant, died, leaving a last will and testament wherein she devised the said premises to A. May Condit, the plaintiff herein. Said will was duly admitted to probate on June 29, 1917, by the surrogate of the county of New York, as a will of real estate, and by virtue of said will the plaintiff herein became and still is the owner in fee of the said premises and the landlord thereof, and, since the last payment of rental to the said Mabel R. Sherman, the original landlord, the plaintiff has received rent from the said defendant as tenant under said lease to and including March 31, 1926.

On or about July 25, 1917, the said defendant, by an instrument dated on that day, entered into an agreement in writing with one Morris Workin and one Isaac Workin whereby the said defendant, as landlord, purported to lease to the two Workins, as tenants, and the latter to hire from the said landlord, all of the aforesaid premises, at an annual rental of $16,000 for the first five years of the term and $16,500 for the remainder of the term commencing August 1, 1917, and terminating March 31, 1931, and on October 17, 1917, the two Workins, as landlords, entered into a written agreement with a New York corporation, known as W. G. Corporation, whereby the said Workins, as landlords, purported to lease to said W. G. Corporation, as tenant, all of the aforesaid premises for a term commencing November 1, 1917, and ending March 31, 1931.

Neither of the said two instruments last above referred to was recorded in the office of the register of New York county until March 4, 1921, or until nearly four years after the said instruments had been executed and delivered. The plaintiff did not consent in writing to the making of either of said instruments purporting to sublet said premises and it does not appear that prior to the recording of said instruments, or until October 21, 1925, either the plaintiff or her predecessor in title had any information or knowledge concerning the execution of said two alleged subleases of said property. The plaintiff and her predecessor in title duly received from the defendant the monthly rental provided by the original lease of said premises up to and including March 31, 1926, the end of the period provided for in said lease from Mabel R. Sherman to the defendant. It is further agreed between the parties that since March 31, 1926, the rent has been duly tendered by defendant and refused by plaintiff. It is further stipulated

that since October 21, 1925, the plaintiff has received such rent with full knowledge of the terms of the two alleged subleases and with all of the facts hereinbefore mentioned. On October 11, 1922, the plaintiff received from the defendant the following letter:

"In accordance with paragraph 22nd of the lease entered into between yourself and the undersigned, which lease is dated November 24, 1915, covering the following described premises:

"The entire building and premises located on the Southwest corner of 131st St. & Broadway, Manhattan, and also known as Nos. 600-2 W. 131st St. N. Y. C. in said City, together with all the machinery at said premises belonging to the party of the first part.

"I hereby serve you this written notice of *my intention* to exercise *my option* for renewal of said lease for a period of five years from April 1st, 1926, *upon the same terms and conditions* as in said lease provided and *I agree* from on and after April 1st, 1926, to pay the yearly rental of $7,500.00 in equal monthly installments in advance, on the first day of each and every month, in accordance with the terms of said renewal.

"I would ask you to kindly acknowledge receipt of this letter, and oblige   \*   \*   \*" (Italics are the writer's.)

This letter was evidently intended by defendant as a compliance with the provisions of the 22d paragraph of the lease to the defendant hereinbefore quoted, the defendant contending that thereby he exercised his option to extend the leasehold term of said premises for five years in accordance with said provision of the lease to him.

These proceedings are instituted on the part of the plaintiff to obtain an adjudication that the plaintiff is entitled to the possession of the said premises. The plaintiff contends that there has been no valid exercise of the option to extend the term of the original lease given by her predecessor beyond the 1st day of April, 1926. The plaintiff further contends that the instrument whereby the defendant purported to sublet the said premises to the Workins was, in fact and in effect, an assignment of the lease held by the defendant, and that thereby the defendant divested himself of all right and interest in the original lease. At no time, either before the recording of said two instruments from the defendant to the Workins and from the Workins to the W. G. Corporation or afterwards, did the defendant or any one else inform the plaintiff or her predecessor in title of the execution of either of said instruments, and neither the defendant nor the Workins nor the W. G. Corporation did either of the things required to be done in the

First Department, April, 1927. [Vol. 220

event of an assignment of the original lease. There was no request made for the written consent of the landlord thereto. The additional security of $5,000 provided by the 3d clause of the lease was not posted, and the plaintiff was not advised of any assumption by the Workins or the W. G. Corporation of the obligations of the defendant under the original lease. From November 24, 1915, until March 31, 1926, the defendant paid to the plaintiff and her predecessor in title the rent prescribed in the original lease. The defendant herein contends that the instrument executed by him to the Workins on July 25, 1917, was a sublease of the property in question and was not within the inhibition of paragraph 3 of his lease, and that no written consent of the landlord was required to effect such subletting.

I am of the opinion that, under the decisions of this court and of the Court of Appeals, the alleged sublease of July 25, 1917, by the defendant to Morris Workin and Isaac Workin, was an assignment of all rights of the defendant under the lease to him, executed by Mabel R. Sherman on November 24, 1915. (*Stewart* v. *Long Island R. R. Co.*, 102 N. Y. 601; *Herzig* v. *Blumenkrohn*, 122 App. Div. 756; *Woodhull* v. *Rosenthal*, 61 N. Y. 382.) In *Stewart* v. *Long Island R. R. Co. (supra)* Judge RAPALLO, writing for the Court of Appeals, said (at pp. 607, 608, 612): " Where a lessee of land leases the same land to a third party, the question has often arisen whether the second lease is in legal effect an assignment of the original lease, or a mere sub-lease. * * * The rule is well settled that if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term, it will, as to the landlord, amount to an assignment of the lease, and the essence of the instrument as an assignment, so far as the original lessor is concerned, will not be destroyed by its reserving a new rent to the assignor with a power of re-entering for non-payment * * *.

" The cases which hold that where a lessee sub-leases the demised premises for the whole of his term, but his lessee covenants to surrender to him at the end of the term, the sub-lease does not operate as an assignment, proceed upon the theory that by reason of this covenant to surrender, some fragment of the term remains in the original lessor."

This court in *Herzig* v. *Blumenkrohn (supra)*, by SCOTT, J., said (at p. 758): " The sole question presented, therefore, is whether or not the instrument executed' by Blumenkrohn to Crystal is a sub-lease or an assignment. * * * The essential distinction between a sub-lease and an assignment lies in the extent to which the original lessee has parted with his interest. If he has parted

with his entire interest he has made an assignment; if he has retained a reversion in himself he has made a sub-lease."

In *Woodhull* v. *Rosenthal* (*supra*) the Court of Appeals, per DWIGHT, C., said (at p. 391): "The essential distinction between an assignment and a sub-lease is simply this: If a lessee, by any instrument whatever, whether reserving conditions or not, parts with his entire interest, he has made a complete assignment; if he has transferred his entire interest in a part of the premises, he has made an assignment *pro tanto*. If he retains a reversion in himself, he has made a sub-lease. * * * In this last case [*Bedford* v. *Terhune*, 30 N. Y. 453] it is said that when there is a transfer of the whole of a term, the person taking is an assignee, and not an under-tenant, although there is, in form, an under-letting. The views in *Bedford* v. *Terhune* are sustained by the late English decisions, and the general weight of authority." (Citing cases.)

There can be no doubt that the act of the defendant in sub-letting to the Workins the premises in question for the full possible term during which he might have held the same under the terms of his lease divested the defendant of all interest under the original lease, and that while, in form, the instrument executed by defendant was a subletting, its effect was to transfer to the Workins the whole of the leasehold term, and, under the decisions from which quotations have been made, the instrument constituted a legal assignment of all of the defendant's rights under the lease. Having thus assigned the lease for the entire remainder of the term during which the defendant might have held said premises thereunder, such assignment carried with it the option to obtain a five-year extension of the original term.

I am of the opinion that by the execution by defendant of the assignment of said lease to the Workins, the defendant divested himself of all interest therein, including the option to renew. (*Leibowitz* v. *Bickford's Lunch System*, 241 N. Y. 489.) The covenant of the lease, permitting, upon the terms therein contained, the extension for five years, provides for a written notice upon the landlord of the intention of the tenant to exercise said option at least six months prior to April 1, 1926, and was a covenant running with the land and, even assuming the defendant could validly assign, it could only be exercised by the assignee and holder thereof, and said covenant inured only to the assignee of the lease. (*507 Madison Avenue Realty Co.* v. *Martin*, 200 App. Div. 146; 1 Tiffany Real Prop. [2d ed.] 178, § 56; *Warner* v. *Cochrane*, 128 Fed. 553; 1 McAdam Landl. & Ten. [4th ed.] 606.) Furthermore, the attempted assignment, while it served to divest the

defendant of all rights under his lease, including the right of renewal for the additional five-year period, was made without the written consent of the landlord, and, so far as plaintiff was concerned, was ineffective to confer any right of possession in the assignee.

The suggestion that, in exercising the renewal option after the lease had been assigned, the defendant was acting as the agent of the assignee is, in my opinion, answered by the fact that there was no valid assignment made. The parent lease provided that the tenant should not assign without the landlord's consent in writing. No written consent of the landlord having been obtained, the defendant's attempted assignment was abortive.

The defendant, by his acts, has maneuvered himself into a position where his right and that of his would-be assignees to occupy the premises in suit ended on March 31, 1926.

I think there is little force in the suggestion that the plaintiff, by accepting rent after knowledge of the assignments of the lease, ratified the same. The instruments whereby the present occupant claims the right of possession were executed in July and in October, respectively, of 1917. For some reason they were withheld from record for nearly four years, and it was not until October 21, 1925, eight years after their execution, that plaintiff knew of their existence. During all this time the monthly installments of rent were regularly paid to the plaintiff, *not by the assignees, but by the defendant himself.* And even after plaintiff learned of the abortive attempts to assign the lease the defendant continued to pay to plaintiff the monthly rental down to and including the month of March, 1926, and when but five months before the expiration of the term, she learned of the purported subletting, plaintiff may well have doubted that the unauthorized acts of the defendant and his assignees, concealed from her for eight years, had effected any change in the situation. Surely the continued acceptance of rent from the defendant, with whom plaintiff's predecessor in title had contracted and who had no right to assign the lease without the plaintiff's written consent, cannot, under the circumstances, be said to have worked a ratification of the assignments. It does not appear that the plaintiff, either by word or act, ever recognized the present occupant as her tenant.

I am, therefore, of the opinon that the plaintiff is entitled to judgment for the possession of said premises.

Submission of controversy dismissed, without costs. Settle order on notice.