■ Unionport Shoes, Inc., Respondent, v Parkchester South Condominium, Inc., Appellant. [613 NYS2d 605] —Order of the Supreme Court, Bronx County (Bertram Katz, J.), entered January 13, 1993, which denied defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Defendant Parkchester South Condominium ("Parkchester") is the owner and landlord of commercial property located at 1571 Unionport Road, Bronx County. Parkchester became the owner of the property in 1986. Prior to that time, the property was owned by Parkchester Apartment Owners Company, which had entered into a 1980 lease with Cornell's Apparel, Inc., a children's clothing store. This lease was extended to 1995 by a subsequent agreement between Cornell's and defendant's predecessor in interest.

Plaintiff Unionport Shoes, Inc. is a Buster Brown Shoe Dealer, which occupies a small portion of the premises leased to Cornell's pursuant to a written agreement, denominated a "sublease", originally drafted in July 1982 and renewed by Cornell's in 1988. Matthew Milo, the current president of Unionport Shoes, became its owner in 1986, succeeding the estate of the previous owner. The record indicates that many of Unionport's corporate papers were lost after the prior owner's death. In any event, Mr. Milo stated, in his deposition, that he never questioned the validity of the sublease because it was common knowledge that a shoe department had been operated in Cornell's for over 25 years.

In early 1989, Cornell's fell behind in making rent payments and entered into discussions with Parkchester to find a purchaser to take over Cornell's lease. During this time, Unionport was apparently assured by Cornell's owner, Michael Arons, that there was no cause for concern because Cornell's would rectify any deficiency in the sublease.

On February 14, 1990, the president of Unionport sent a copy of the sublease to Parkchester. Shortly thereafter, by notice of petition and petition dated March 20, 1990, Parkchester commenced a summary proceeding against Cornell's for

nonpayment of rent, in which Unionport is designated as "occupant". Cornell's ceased operations by the end of March and subsequently, on May 16, 1990, entered into a lease surrender agreement with Parkchester in which Cornell's recites that it has done nothing to encumber the premises in any way. On the same date, Parkchester entered into a lease with a new tenant, "Kid's Place".

On May 1, 1990, Unionport sent a rent check to Parkchester, together with a letter explaining that it had formerly paid rent to Cornell's. Parkchester returned the check with a letter stating that it did not recognize the sublease and would not accept the rent. On May 7, 1990, Unionport's goods were removed from the premises at the direction of Cornell's owner and were taken to a warehouse in Long Island City. Unionport contends that it was only able to recover half of its $50,000 worth of inventory from the warehouse.

Unionport brought this action against Parkchester claiming wrongful eviction, wrongful interference with contractual relations, and conversion. Parkchester moved for summary judgment on the grounds that the purported sublease is in violation of the express terms of the 1980 principal lease, that there has been no waiver of this provision, and that Unionport merely had a concession agreement with Cornell's, granting it a license to occupy the space but conferring no property interest in the premises.

Supreme Court denied Parkchester's motion on the ground that an issue of fact exists as to whether Parkchester's delay in enforcing the subletting restriction in its lease with Cornell's constitutes a waiver of the covenant. The court further ruled that discovery should proceed in order to determine if Parkchester shares responsibility with Cornell's for conversion of plaintiff's merchandise.

On appeal, the parties contest whether plaintiff's agreement with Cornell's was a sublease or merely a license to operate a concession (see, Megaris Furs v Gimbel Bros., 172 AD2d 209, 210) and, if a sublease, whether it was valid or not (see, Millicom, Inc. v Breed, Abbott & Morgan, 160 AD2d 496, 497, lv denied 76 NY2d 703). Also in dispute is whether defendant's predecessor in interest consented to the purported sublease, either expressly or by implication. It is Unionport's contention that, upon Cornell's surrender of its lease (which it deems "voluntary"), it acceded to the status of a tenant of Parkchester. Finally, Unionport alleges that negotiations conducted by Parkchester with Cornell's constitute tortious inter-

ference with contractual relations by inducing Cornell's to breach its agreement with Unionport.

Whether Parkchester or its predecessor in interest learned of plaintiff's sublease with Cornell's and took no action to enforce the lease provision so as to constitute waiver is generally regarded as a question of fact *(Jefpaul Garage Corp. v Presbyterian Hosp.,* 61 NY2d 442, 448; *see also, Atkin's Waste Materials v May,* 34 NY2d 422; *contra, Monarch Information Servs. v 161 William Assocs.,* 103 AD2d 703, 704). While there is no evidence of an attornment by plaintiff *(see, Krasner v Transcontinental Equities,* 70 AD2d 312, 316) nor ratification of the sublease by defendant *(see, Condit v Manischewitz,* 220 App Div 366, 367), the very length of the asserted subtenancy inclines us to afford plaintiff the opportunity to establish, if it can, a waiver of the subletting prohibition by defendant or its predecessor *(see, Atkin's Waste Materials v May, supra,* at 427; *Woollard v Schaffer Stores Co.,* 272 NY 304, 312; *Da Costa's Automotive v Birchwood Plaza Shell,* 106 AD2d 484, 485).

Assuming the validity of the sublease, the voluntary surrender of the lease by Cornell's would not operate to terminate the sublease *(Da Costa's Automotive v Birchwood Plaza Shell,* 106 AD2d 484, 485, *supra; Ashton Holding Co. v Levitt,* 191 App Div 91, 93). Unionport would therefore have a claim for wrongful eviction against Parkchester based on the failure to comply with legal requirements to effect its eviction as a tenant of the premises *(see, 170 W. 85th St. Tenants Assn. v Cruz,* 173 AD2d 338; *compare, P & A Bros. v City of N. Y. Dept. of Parks & Recreation,* 184 AD2d 267 [self help may be employed to oust licensee]). Irrespective of warehouse receipts suggesting that Michael Arons, the owner of Cornell's, effected plaintiff's ouster from the subject premises, plaintiff should be permitted an attempt to demonstrate that Parkchester induced its removal and, thus, that Parkchester bears some responsibility for the alleged conversion of plaintiff's inventory.

Finally, assuming both a valid subletting and defendant's awareness of the sublease, plaintiff has established a prima facie case of wrongful interference with contractual relations *(Israel v Wood Dolson Co.,* 1 NY2d 116, 120). While it is not clear, under the circumstances of this case, that the negotiation of the surrender agreement and resultant interference with the purported sublease were the result of malice *(154 Nassau St. Realty Co. v Pinkerton's Natl. Detective Agency,* 17 AD2d 292, 294-295, *affd* 12 NY2d 1084), defendant's brief fails

to address the subject of economic justification for seeking surrender of the lease *(Fallon v Wall St. Clearing Co.,* 182 AD2d 245, 250; *State Enters. v Southridge Coop. Section 1,* 18 AD2d 226, 227-228). Concur—Rosenberger, J. P., Ellerin, Kupferman, Ross and Rubin, JJ.