*675 OPINION OF THE COURT
Edward H. Lehner, J.
The basic legal issue presented on the motions before me is whether a sublessee, who has not yet entered into possession of the leased premises and whose sublease was not consented to by the main landlord, is entitled to possession as a tenant of the main landlord when the sublessor after executing the sublease voluntarily surrendered possession of the premises.
Defendant Apple Bank for Savings (Apple) was a lessee of space in a building at Fourth Avenue and 14th Street in Manhattan under a lease that provided (as modified) for a term expiring in 2004 (the Lease). The Lease specified that Apple could assign or sublease the space without the consent of the landlord, but that if Apple or any assignee or sublessee intends to use the premises for other than as a banking office, “such change of purpose shall be subject to the Lessor’s approval which approval shall not be unreasonably withheld.”
By sublease dated December 14, 1999, Apple leased the premises to plaintiff Duane Reade for “the conduct of a retail drug store and pharmacy” for a term to commence January 3, 2000 and to expire September 29, 2004, with no restriction on the number of hours during which the store could be open (the Sublease). Paragraph 30 thereof provides that: “The term of this sublease shall not commence until the Main Landlord shall have given its written consent hereto in accordance with the terms of the Main Lease and this Sublease * * * Sublessor shall not be obligated to take any action to obtain such consent other than to request such consent from the Main Landlord * * * If the Main Landlord does not give its consent to this Sublease for any reason within ninety (90) days after the date hereof, then at any time after the expiration of said ninety (90) day period, either party hereto may cancel this Sublease by giving written notice to the other party, and if such notice shall be given, this Sublease shall be deemed cancelled and have no further force or effect as of the fifth day following the date of the giving of such notice.”
In light of the proposed change of use of the premises from a bank to a pharmacy, Apple submitted the Sublease to the defendant owner of the property, with a request for consent thereto. By letter dated December 20, 1999, the owner’s counsel wrote the following to Apple:
“After reviewing your proposed sublease and reviewing the master sublease, the landlord has determined that the use *676 that you propose for the space provides for a 24-hour 7 day a week operation.
“It should be noted that pursuant to the terms of the underlying sublease Paragraph 3.6(a), the landlord is obligated to provide heat to the demised premises only on business days during the hours of 8:00 a.m. to 9:00 p.m. This restriction is indicative of the intent of the parties to the agreement that a 24-hour 7 day a week operation is not suitable for this building.
“Therefore the landlord declines to approve your request for a change of use which approval is required pursuant to Paragraph 3.2 of the underlying sublease.
“I am returning to you your re-proposed sublease which pursuant to Paragraph 30 thereof should be deemed cancelled.”
In light of such refusal to consent, Apple commenced an action in this court on December 23, 1999 seeking a judgment declaring that the refusal was unreasonable. In that action Apple pointed out that other stores in the subject building are opened many late hours, including a pizza store that is open 21 hours a day. Apple argued that it appeared that the landlord was negotiating with other tenants, including defendant Walgreen Eastern Co. Inc. (Walgreen), for rentals higher than being paid by Apple. In a letter dated October 27, 1999 regarding a prior consent request, the landlord’s counsel wrote to Apple stating that it is not “an unreasonable withholding of consent * * * considering that the Landlord has a right to utilize the premises in a manner that it deems most advantageous.” In connection with that litigation, Duane Reade informed Apple by letter dated January 27, 2000 that “in the event the court determines that the Landlord can reasonably object to store hours of 24 hours, Duane Reade will agree to modify the hours of operation * * * to 7:00 a.m. until 12 a.m.,” with a proviso that if the sublease is so modified, the rent should be reduced by 10%.
In the aforesaid action by Apple, I scheduled a hearing on its motion for a preliminary injunction for January 28, 2000. On that day the parties announced that the action was settled. Although the terms of the settlement were not then spread on the record, an instrument dated January 28, 2000 shows that in consideration of the payment to it of $1,000,000, Apple surrendered the premises to the landlord effective February 1, 2000, with the parties mutually releasing each other from the obligations under the Lease.
It appears that on February 1, 2000 the landlord and Walgreen executed a lease for the subject premises as of January *677 1, 2000 for use as a retail drug store, which lease contained no limitation on the hours during which the store could be opened, although in a letter dated December 20, 1999 Walgreen stated that it “does not intend to operate on a 24 hour a day basis.” However, paragraph 30 of that lease provides: “At Tenant’s request Landlord shall provide heat to the demised premises on a 24-hour basis provided tenant shall pay the increment increase in cost above the Landlord’s cost to famish heat during the hours set forth in the rider, Article 60.”
Subsequently, Apple’s attorney wrote'the following to counsel for plaintiff herein: “Once the Main Landlord rejected the Sublease, neither Apple nor Duane Reade had any further obligation with respect thereto. Because the Main Landlord responded to and rejected Apple Bank’s request, the 90-day period in paragraph 30 of the Sublease, which addressed the possibility that the Main Landlord might not have given a response during that period, is inapplicable.”
In response, counsel for Duane Reade advised the landlord that in light of the surrender by Apple, Duane Reade “succeed [ed] to the obligations of Apple” under the Sublease, and was ready to “commence its renovating the premises for occupancy as a drugstore.” Thereafter, by notice dated March 21, 2000, Apple advised Duane Reade that, “without prejudice to the position of Apple * * * that such notice is not required under the circumstances,” the Sublease “has been cancelled.” This notice was apparently sent because of the 90-day period specified in the above-quoted paragraph 30 of the Sublease.
The above facts demonstrate that with knowledge of a sublease between Duane Reade and Apple, the defendant landlord, in order to obtain a significantly higher rental for its premises, (i) refused to consent to the Sublease, (ii) paid Apple $1,000,000 for a surrender of its leasehold interest, and (iii) rented the premises to Walgreen (which was aware of the Sublease) for the same use as contemplated by Duane Reade, without any limitation on the hours of permitted operation. The foregoing reeks of business impropriety and is hardly an auspicious start for Walgreen’s intended reentry into the New York City pharmacy market.
As set forth in the above-quoted letter from the owner’s counsel, the only reason proffered for refusing to consent to the Sublease was because of a contemplated 24-hour, seven-day-a-week operation. Yet the owner subsequently leased the premises to Walgreen for the very same use contemplated by Duane Reade, with no limitation on the hours of operation. *678 Prior to the surrender, Duane Reade, as a sublessee of Apple and thus not in privity with the owner, lacked the authority to enforce the Lease prohibition against an unreasonable refusal to consent. (See, Tamco Enters. v Mitsubishi Elec. Am., 190 AD2d 623 [1st Dept 1993]; Mogull Music Corp. v Madison-59th St. Corp., 162 AD2d 336 [1st Dept 1990].)
The basic rules specifying the rights of parties when a sublessor voluntarily surrenders possession were set forth by the Court of Appeals in 1875 when it wrote in Eten v Luyster (60 NY 252, 259) as follows: “That surrender, and the consequent merger of the greater and lesser interest, terminated the original lease, and the term created thereby, as between the parties to the lease and the surrender * * * But it was not competent for the lessor and lessee to affect the rights of third parties by a formal surrender of the lease. The interests and the terms of the subtenant of the lessee continued as if no surrender had been made. The defendants, the surrenderees and owners in fee, became the immediate landlords of the plaintiff [the sublessee], with only such rights as his lessor would have had to the possession of the premises before the expiration of the term * * * Morrison [the sublessor] could not sell, give up, or surrender to the defendants any thing that did not belong to him; and he could not terminate the lease to the plaintiff, or destroy his rights.”
These principles remain good law today, with the issue often litigated being, whether the surrender was voluntary, and if it is not then the sublessee’s rights would fall as the provisions of a sublease are subject to the termination rights of a landlord set forth in a main lease (Ocean Grille v Pell, 226 AD2d 603 [2d Dept 1996]; Unionport Shoes v Parkchester S. Condominium, 205 AD2d 385 [1st Dept 1994]; Benderson v Computer Task Group, 216 AD2d 922 [4th Dept 1995]; Da Costa’s Automotive v Birchwood Plaza Shell, 106 AD2d 484 [2d Dept 1984]; Ashton Holding Co. v Levitt, 191 App Div 91 [1st Dept 1920]; 2 W. 45th St. Joint Venture v Advance Realty, NYLJ, Sept. 9, 1987, at 7, col 2 [App Term, 1st Dept]; Precision Dynamics Corp. v Retailers Representatives, 120 Misc 2d 180 [Civ Ct, NY County 1983]; Lippe v Professional Surgical Supply Co., 132 Misc 2d 293 [Civ Ct, Queens County 1986]; 1 Dolan, Rasch’s Landlord and Tenant—Summary Proceedings § 9.68 [4th ed]).
“The effect of a voluntary surrender is equivalent to a transfer of the reversion, the interests of the landlord and tenant merge, and what remains is the landlord’s fee subject to *679 the subtenancy.” (Precision Dynamics Corp. v Retailers Representatives, supra, at 182.)
Apple and the landlord contend that the foregoing principles are inapplicable to the facts herein because Duane Reade was not in possession at the time of the lease surrender and the Sublease had been rejected by the landlord. However, the notice from the landlord dated December 20, 1999 rejecting the Sublease did not result in its termination. This is clearly evident from the fact that as late as January 28, 2000 there was scheduled before me a hearing on Apple’s application to have the landlord’s rejection of the Sublease declared to be unreasonable. Hence, although under the Sublease the “term” would not commence until the consent issue was resolved, that does not mean that the Sublease itself was cancelled by the landlord’s December 20, 1999 rejection letter.
Here there is no question that the surrender by Apple on January 28, 2000 upon payment to it of $1,000,000 was voluntary. Therefore, immediately upon the surrender, pursuant to the above-cited principles, Duane Reade succeeded to the rights of Apple. (See, Ocean Grille v Pell, supra, at 605 [where the Court wrote that where a lease termination “is not accomplished pursuant to a provision in the paramount lease * * * the subtenant becomes the immediate tenant of the original lessor * * * and the terms of the sublease continue as if no termination had occurred”] [emphasis supplied].) Consequently, upon the surrender, plaintiff was placed in a position to enforce the prohibition against an unreasonable rejection of the Sublease. Since it is abundantly clear that the rejection was unreasonable, Duane Reade is entitled to a declaration to that effect and thus entitled to possession of the subject premises pursuant to the terms of the Sublease, subject to the provisions of the Lease.
Accordingly, plaintiff’s motion, which on consent was converted into a motion for summary judgment on the complaint, is granted to the extent that it seeks a declaration that it is entitled to possession of the subject premises as a tenant of the main landlord. The cross motions of defendants Walgreen, Apple and IG Second Generation Partners, L. P. to dismiss the request for declaratory relief are denied. In light of the declaration that plaintiff is entitled to possession, its claims for monetary damages are dismissed.