[894 NYS2d 343]

Kirsten M. Tiller et al., Plaintiffs, v Heather Shuboney et al., Defendants.

City Court of Rochester, December 3, 2009

## APPEARANCES OF COUNSEL

*Kirsten M. Tiller*, plaintiff pro se. *Deborah L. Warner*, plaintiff pro se. *Heather Shuboney*, defendant pro se. *Rita Shuboney*, defendant pro se.

## OPINION OF THE COURT

ELLEN M. YACKNIN, J.

Introduction

Plaintiffs Kirsten M. Tiller and Deborah L. Warner have sued defendants Heather Shuboney and Rita Shuboney to recover damages associated with Kirsten Tiller's ouster from the apartment in Rochester, New York, that she shared with Heather Shuboney, her former roommate. Specifically, plaintiffs sue defendants for $2,622.80, plus disbursements.

An arbitrator's decision in this action was issued on August 3, 2009. Following a party's demand, a trial de novo was held on September 10, 2009. Plaintiffs Kirsten Tiller and Deborah Warner testified for plaintiffs. Defendants Heather Shuboney and Rita Shuboney testified for defendants.

To prevail in a civil action, a plaintiff must show, by a preponderance of the credible evidence, that he or she is entitled to a judgment in his or her favor against the other party. After reviewing the credible testimony and the relevant documents, the court makes the following findings of fact and conclusions of law.

Findings of Fact

In August 2008, plaintiff Kirsten Tiller and defendant Heather Shuboney, both college students at Monroe Community College (MCC) in Rochester, New York, agreed to rent an apartment at Crittenden Way Apartments in Rochester, New York, as roommates. On August 11, 2008, Heather Shuboney signed a 12-month, 21-day lease with the landlord, providing for a $725 security deposit and $725 monthly rent.[1]

Although Ms. Tiller did not sign the lease, the landlord was informed that Kirsten Tiller was living in Ms. Shuboney's apartment. As Ms. Shuboney's roommate, Ms. Tiller verbally agreed to pay half the costs associated with renting the apartment, including half the security deposit, half the monthly rent, and half the utilities. Ms. Tiller and Ms. Shuboney did not, however,

---

1. Defendant Rita Shuboney, Heather Shuboney's mother, is listed as a co-resident on page 1 of the lease that was submitted into evidence. That lease, however, was signed only by Heather Shuboney and the landlord's agent.

enter into any verbal or written agreement regarding their respective obligations if one of them wanted to move out of the apartment, or if Ms. Shuboney wanted Ms. Tiller to move out of the apartment, before the expiration of the lease on August 31, 2009.

Ms. Tiller's mother, plaintiff Deborah Warner, regularly paid Ms. Shuboney for her daughter's share of the monthly rent and apartment expenses. In the ensuing months, though, tensions developed between the two roommates. From Ms. Shuboney's perspective, the final rift in their relationship occurred when, on February 10, 2009, Ms. Shuboney learned that Ms. Tiller had brought a kitten into the apartment the previous night without notifying Ms. Shuboney. After discovering the kitten, Ms. Shuboney confronted Ms. Tiller on campus. Later that evening, Ms. Shuboney texted Ms. Tiller that if the kitten wasn't removed immediately she would have to vacate the apartment. In a reply text, Ms. Tiller wrote, "Hather realy im dealing with something right now . . . The cat aywere and im planning on moving out anyways [*sic*]." The next night, February 11, 2009, Ms. Tiller took the kitten to her mother's house in Sherill, New York, where she went for winter break.

During the next several days, Ms. Tiller and Ms. Shuboney exchanged several text messages. In some of her texts to Ms. Tiller, Ms. Shuboney stated that she planned to change the apartment locks to prevent Ms. Tiller from entering.

On February 23, 2009, at the end of winter break, Ms. Tiller returned to the apartment with her mother, Deborah Warner. When Ms. Tiller and Ms. Warner arrived, the locks had been changed. Upon knocking, defendant Rita Shuboney, Heather Shuboney's mother, answered the door and informed Ms. Tiller and Ms. Warner that she and her daughter had changed the locks, that Ms. Tiller was not permitted to live at the apartment, and that Ms. Tiller would have to remove her belongings. Rita Shuboney then permitted Ms. Tiller to enter the apartment where she found that all her belongings had been stuffed into garbage bags. On her bed, she found a letter from Heather Shuboney, dated February 10, 2009, stating that Ms. Shuboney was giving Ms. Tiller until February 28, 2009 to vacate the apartment and to remove all her possessions.

Confronted with this situation, Ms. Tiller and Ms. Warner called the police. When they arrived, however, the police informed Ms. Tiller and Ms. Warner that Rita Shuboney had previously called them and advised them that she was the ten-

ant and that Ms. Tiller was not legally entitled to be in the apartment. The police therefore did not permit Ms. Tiller to enter the apartment without Rita Shuboney's consent.

Because they were not prepared to move Ms. Tiller's belongings out of the apartment, Ms. Tiller and Ms. Warner returned to Ms. Warner's home, some 125 miles away. On February 27, 2009, Ms. Tiller sent Ms. Shuboney a letter stating that she would return to the apartment on or before March 30, 2009 to retrieve her possessions. On March 3, 2009, Ms. Shuboney wrote to Ms. Tiller, stating that if Ms. Tiller did not remove her belongings before March 8, 2009, they would be moved to the basement. On March 4, 2009, before she received Ms. Shuboney's March 3rd letter, Ms. Tiller wrote a second letter to Ms. Shuboney stating that she would be arriving at the apartment on March 16, 2009 to pick up her possessions.

On March 16, 2009, Ms. Tiller and Ms. Warner arrived at the apartment to remove Ms. Tiller's belongings. When they arrived, Heather Shuboney, her mother, her uncle, and a police officer were present. All of Ms. Tiller's furniture and possessions were in the basement, including all her personal items and clothing that were in the garbage bags. When she examined her belongings, Ms. Tiller noticed that her dressers were scratched and that some of her clothing was ruined.

After she was ousted from her apartment, Ms. Tiller moved back home with her mother. Because of the distance between her mother's home and Rochester, Ms. Tiller was unable to complete her spring 2009 semester at Monroe Community College.

As a result of defendants' actions, plaintiffs seek $2,622.80 from defendants for the following damages:

| | | | |
|---|---|---|---|
| (1) | $ | 362.50 | half of the security deposit |
| (2) | $ | 103.66 | prorated February 2009 rent |
| (3) | $ | 148.80 | moving costs |
| (4) | $ | 6.80 | prorated utilities for February 23-28, 2009 |
| (5) | $ | 20.00 | Ms. Tiller's payment for half of the Internet router |
| (6) | $ | 20.00 | Ms. Tiller's payment for half of the deadbolt lock |
| (7) | $ | 150.00 | estimated damage to furniture |
| (8) | $ | 200.00 | estimated damage to clothing |
| (9) | $ | 481.04 | lost payments to MCC |
| (10) | $ | 1,130.00 | lost tuition to MCC |

In turn, defendants deny financial responsibility. Additionally, they contend that even if they are liable for some damages, they

are not responsible for any lost college related expenses because Ms. Tiller could have moved to another apartment in Crittenden Way Apartments or to on-campus housing after she was locked out of her apartment. They also assert that Ms. Tiller owes them $48.21 for her portion of the January 2009 through March 2009 Rochester Gas & Electric bill, and $40.24 for her share of the January 2009 cable bill.

Legal Analysis

The key issue in this action is whether defendants Heather Shuboney and Rita Shuboney were legally entitled to dispossess plaintiff Kirsten Tiller from the Crittenden Way Apartments apartment without a court order. The starting points for this inquiry are the August 11, 2008 lease and the roommates' verbal agreement.

The lease was signed by Heather Shuboney, not by Kirsten Tiller. Accordingly, no contractual landlord-tenant relationship existed between the apartment owner and Kirsten Tiller. Further, the lease contained no provisions regarding subtenancy rights and obligations.

Nonetheless, a contractual relationship existed between Heather Shuboney and Kirsten Tiller, who verbally agreed to pay Ms. Shuboney for half the monthly rent and apartment related expenses. The roommates' verbal agreement, though, did not specify their respective nonfinancial rights and obligations with respect to Ms. Tiller's tenure of occupancy.

When a contract does not expressly spell out the parties' respective rights and obligations, a court must interpret the parties' purpose and intent under the contract. (*See Abramo v HealthNow N.Y., Inc.*, 23 AD3d 986, 987 [4th Dept 2005], *lv denied* 6 NY3d 714 [2006].) Given defendants' actions in this case, however, it is unnecessary for the court to interpret the parties' intent with respect to whether Heather Shuboney and Rita Shuboney were legally entitled to eject Kirsten Tiller from the apartment prior to the lease's expiration date. Even if Heather Shuboney and Rita Shuboney possessed that right, they did not have the legal right to lock Kirsten Tiller out of the apartment without a court order.

A sublease is defined as a "transfer by a tenant of . . . part of his [or her] estate or interest in the whole, or in a part, of the leased premises." (*BLF Realty Holding Corp. v Kasher*, 299 AD2d 87, 94 n 4 [1st Dept 2002], *lv dismissed* 100 NY2d 535 [2003].) Thus, Ms. Shuboney's transfer of part of her interest in

her leased apartment to Ms. Tiller in exchange for half the monthly rent and expenses constituted a sublease. Stated differently, Ms. Shuboney was Ms. Tiller's sublessor, and Ms. Tiller was Ms. Shuboney's sublessee.[2]

As Ms. Shuboney's sublessee, Ms. Tiller was entitled to the same legal protections from Ms. Shuboney that Ms. Shuboney was entitled to have from her landlord. Likewise, as Ms. Tiller's sublessor, Ms. Shuboney was obligated to provide the same legal protections to Ms. Tiller that Ms. Shuboney's landlord was obligated to provide to her. (*See Unionport Shoes v Parkchester S. Condominium*, 205 AD2d 385, 386 [1st Dept 1994]; *Sun Ann Supply v Trenz, Inc.*, 178 AD2d 328, 329-330 [1st Dept 1991].) Among these protections are the right to have at least 30 days' notice prior to an eviction, and the right not to be ejected from the leased premises absent a court order. (*See* Real Property Law § 232-b; RPAPL 711; *International Bus. Machs. Corp. v Stevens & Co.*, 300 AD2d 222, 224 [1st Dept 2002]; *North Shore Community Servs. v Lehrfeld*, 3 Misc 3d 436, 438-439 [Nassau Dist Ct 2004].)

It is undisputed that Heather Shuboney accepted Kirsten Tiller's February 2009 rent payment, that Heather Shuboney provided Kirsten Tiller with fewer than 30 days' prior notice to vacate, and that Heather Shuboney did not obtain a court order before she and her mother changed the locks and ousted Kirsten Tiller from her apartment. Accordingly, defendants violated Kirsten Tiller's legal rights as Ms. Shuboney's sublessee, thereby entitling plaintiffs to reimbursement for the damages caused by defendants' unlawful conduct.

The direct and consequential damages caused by defendants for which plaintiffs are entitled to reimbursement are as follows. First, plaintiffs are entitled to reimbursement of the following apartment related expenditures: $362.50 security deposit; $103.66 for prorated rent for February 23 through 28, 2009; and $6.80 for prorated utilities for February 23 through 28, 2009. These costs, however, are reduced by Ms. Tiller's share of the January 2009 and February 2009 Rochester Gas &

---

2. Under Real Property Law § 226-b (2) (a), a tenant, such as Heather Shuboney, who lives in a dwelling with four or more units has the right to sublease his or her premises subject to the landlord's prior written consent. It is not clear whether the landlord's "Resident Information Form" that Ms. Tiller submitted to the landlord constituted the consent required by law. Nevertheless, any lack of consent would not have voided the sublessor/sublessee relationship between Ms. Shuboney and Ms. Tiller. (*See Ocean Grille v Pell*, 226 AD2d 603, 605 [2d Dept 1996].)

Electric bill ($48.21), and her share of the January 2009 cable bill ($40.24).

Second, plaintiffs are entitled to $148.80 for moving expenses.

Third, because Ms. Tiller was unable to complete her spring 2009 semester as a result of her unlawful dispossession, plaintiffs are entitled to reimbursement of the $1,611.04 they paid to Monroe Community College for charges related to Ms. Tiller's spring 2009 semester. Despite defendants' assertions to the contrary, there is no credible evidence that an immediate move to a different apartment in Rochester was a viable option for Ms. Tiller. Nonetheless, these damages must be offset by $1,087.50, the three months' rent Ms. Tiller would have paid to Ms. Shuboney had she remained a student from March 2009 through the end of the semester in May 2009.[3]

On the other hand, plaintiffs failed to prove the alleged damage to Ms. Tiller's furniture and clothing by a preponderance of the evidence. Similarly, plaintiffs failed to prove their entitlement to reimbursement for half the cost of the Internet router and the deadbolt lock. Ms. Tiller obtained the benefit of both these items while living at the apartment, and there was no evidence that Ms. Shuboney had agreed to reimburse Ms. Tiller for these items once the lease expired. Thus, such damages are denied.

In sum, plaintiffs have demonstrated actual reimbursable damages totaling $1,056.85. Under applicable law, though, additional damages are warranted.

Real Property Actions and Proceedings Law § 853 provides that

> "[i]f a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer."

By changing the apartment lock to prevent Ms. Tiller from entering the apartment, removing Ms. Tiller's possessions from the apartment, and engaging the police to prevent Ms. Tiller from returning to the apartment, Heather Shuboney and Rita Shuboney ejected Ms. Tiller from her apartment in an intentional, forcible, and unlawful manner. Accordingly, defendants

---

**3.** There is no evidence that Ms. Tiller paid rent to her mother after she moved home in February 2009.

are liable to plaintiffs for treble damages. (*See Clinkscale v Sampson*, 48 AD3d 730, 731 [2d Dept 2008]; *Moran v Orth*, 36 AD3d 771, 772-773 [2d Dept 2007].)

Conclusion

For the foregoing reasons, plaintiffs Kirsten M. Tiller and Deborah L. Warner are entitled to a judgment against defendants Heather Shuboney and Rita Shuboney in the amount of $3,170.55, plus disbursements.